In the Matter of Eldon WICHMANN and Rita Wichmann, Debtors.

Bankruptcy No. BK87–521.

United States Bankruptcy Court, D. Nebraska.

July 10, 1987.

Eric Wood of Dwyer, Pohren, Wood, Heavey & Grimm, Omaha, Neb., for debtors.

Tom Briese of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, Grand Island, Neb., for creditor Business Men's Assur. Co. of America.

Richard K. Lydick of Croker, Huck & McReynolds, Omaha, Neb., trustee.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

A confirmation hearing on this Chapter 12 case was held in Lincoln, Nebraska, on July 7, 1987. Appearing on behalf of the debtors was Eric Wood of Dwyer, Pohren, Wood, Heavey & Grimm, Omaha, Nebraska. Appearing on behalf of creditor Business Men's Assurance Company of America was Tom Briese of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, Grand Island, Nebraska. Richard K. Lydick of Croker, Huck & McReynolds, Omaha, Nebraska, appeared as trustee.

By Journal Entry a number of issues concerning the objection filed by BMA to the debtors' Chapter 12 Plan have been ruled upon. However, there remains the issue of the appropriate interest rate that the debtors should be required to pay on the allowed claim of BMA which is secured by real estate. At the hearing, the Court informed counsel for the parties that the appropriate interest or discount rate on the allowed secured claim would be that rate which was equal to the treasury bond yield with remaining maturity matched to the average amount outstanding during the repayment period of the allowed claim. The purpose of this Memorandum opinion is to more fully explain the Court's reasoning and the meaning of the appropriate interest rate as defined above.

Debtors are family farmers as that term is defined under Chapter 12 of the Bankruptcy Code. On or about May 26, 1987, debtors filed this Chapter 12 case. On the date of filing, debtors owed Business Men's Assurance Company of America a principal amount of $87,750 plus interest accrued through April 21, 1986, of $32,763.57 plus interest accruing thereafter to date of the petition at the rate of $29.36 per day, for a total in excess of $120,500. The Court, by separate Journal Entry, has determined that the allowed secured claim of BMA is $117,000. Debtors have proposed to pay such claim over thirty years at the rate of 10% interest, with annual payments including interest to be made on the allowed secured claim.

Evidence was presented concerning the market rate of interest for a loan of this type. As has been this Court's experience in several Chapter 12 cases which have been litigated on the issue of interest rates, witnesses for the creditor first tell the Court that a loan on the terms proposed by the debtor would not be made even if a high interest rate were allowed. They suggest that this loan does not meet any of the qualifications necessary for the particular lending agencies to enter into such a loan agreement. For example, they claim that the debtor does not meet any of the necessary ratios concerning debt to equity, cash flow, etc. However, they then testify that if they were forced to make such a loan, it would be at a rate significantly higher than the rate proposed by the debtor and, in addition, it would not be a fixed rate of interest. Each of the witnesses, both in this case and in the other cases in which the issue was raised, claim that long-term mortgage loans are not made with fixed

rates of interest. The very best situation the creditor can conjure up for the Court is a rate of interest that can be adjusted after a certain number of years or a loan which can be reviewed by the creditor both for interest rate and other matters after five or ten years.

11 U.S.C. § 1225(a)(5)(B) provides that a court shall confirm a plan over the objection of a secured creditor if the creditor will retain the lien securing its claim and will receive value, as of the effective date of the plan, that is not less than the allowed amount of the creditor's claim. This means that the creditor is to receive the present value of its collateral to be distributed under the plan. In effect, the court is to determine an interest rate to be paid on the allowed secured claim which will result in the creditor receiving in payments over time the amount that such creditor would receive if the collateral were liquidated on the date of confirmation; this assumes that a dollar received in the future is worth less than a dollar received today, which requires a payment of interest to make the payment in the future equal in value to a payment today.

The Eighth Circuit Court of Appeals has ruled for the purposes of determining the appropriate discount rate or interest rate in cases under Chapter 11 that the court must determine the "market rate". The court, in giving guidance to the Bankruptcy Court in this area, has stated:

"The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and the risk of subsequent default."

*In re Monnier Bros.*, 755 F.2d 1336, 1339 (8th Cir.1985). See also *United States v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986).

This Court believes that the appropriate "market rate" for a loan of a term equal to the payout period, with due consideration for the quality of the security and the risk of subsequent default, is not necessarily, nor even usually, the rate at which some lender would, if coerced, loan money to a debtor in bankruptcy. If that were the standard, the Court would probably be required to find that no lender would make a loan of this type to any debtor in bankruptcy and, therefore, no interest rate would be appropriate and it would then follow that the plan could not be confirmed because the creditor would not receive the allowed amount of its secured claim through payments over time.

However, that analysis is only one reason why the hypothetical rate at which a hypothetical lender would make such a hypothetical loan is rejected. The other reason is that such a determination requires expert testimony in every case. This Court believes that allowing the discount rate to vary depending upon the quantity and the quality of expert proof simply creates additional problems both for the debtors, the creditor and the Court by eliminating certainty and introducing additional delay and cost into the confirmation process. This Court agrees that a preferable approach is to choose a market rate which accurately reflects the peculiar situation of a bankruptcy reorganization and can be easily found and readily available in financial publications. See *Carbiener, Present Value in Bankruptcy: a Search for an Appropriate Cramdown Discount Rate*, 32 S.D.L.Rev. 42, at 59 and 60.

The Bankruptcy Court in Kansas has previously determined, in the context of a Chapter 13 case which has exactly the same statutory requirement as a Chapter 12 case, that the appropriate discount rate is comprised of a "riskless" rate, which is usually the equivalent of a rate of interest paid on government bonds and bills which are generally not considered subject to default plus the addition of a risk component. *In re Fisher*, 29 B.R. 542, 543 (Bankr.D. Kan.1983).

In a recent case, *In re Doud*, 74 B.R. 865 (Bankr.S.D.Iowa, 1987), Bankruptcy Judge Jackwig determined that the yield on treasury bonds would be a preferable riskless

rate because the yields on treasury bond rates are reported on a variety of maturity dates which permit accurate matching of the rate with the repayment periods in a Chapter 12 plan. Since most Chapter 12 plans amortize some of the debt over a period of years, the treasury bond rate can be matched to those annual repayment terms. In addition, the yields on treasury bonds are relatively simple to find because they are publicly reported in a number of sources and they reflect national markets reported daily.

It is not appropriate, however, to determine the interest rate for a plan which will pay out over thirty years by simply looking at the rate for treasury bonds which mature in thirty years. This is because during the reorganization plan, the creditor will receive a payment of principal in each of the thirty payments which will reduce the actual amount outstanding on the claim as each principal payment is made. Treasury bonds, on the other hand, do not repay principal until the maturity date and the interest rate reflects the fact that the borrower (United States Government) is retaining the total amount of the loan principal and paying it all back in one lump sum, rather than making interim payments over the years.

In the Law Review article referred to above, the author suggests that this difference can be reconciled by a simple mathematical calculation. On each loan there is an average amount outstanding during the entire repayment period and that amount can be stated as a percentage. It is calculated by adding up the principal amounts owed during each payment period and dividing that sum by the number of periods. If the average percentage of a creditor's claim outstanding during the repayment period is 55% and the repayment period is ten years, the discount rate should be based on a government security with the duration of 55% of ten years, or 5.5 years. For example, in a case where $10,000 in debt is proposed to be paid over ten years with yearly payments, the average outstanding indebtedness, calculated by adding up the principal amounts outstanding each year and dividing by the number of

periods, is $5,500. Stated as a percentage, 55% of the claim is outstanding over the payment period. Since the debtor's plan in this example uses a ten-year repayment term, the discount rate will be based on a government security with a duration of 55% of ten years or, in other words, 5.5 years. This same calculation can be made for any payment period and any amount determined to be the allowed secured claim. See *In re Doud, supra.*

Once this rate is determined by finding the treasury bond rate for bonds with a maturity closest to 5.5 years, an additional factor must be calculated. A treasury bond rate is basically risk free. The *Monnier* court, relying upon the analysis in *5 Collier on Bankruptcy,* ¶ 1129, at 1129–65, requires this Court to consider the risk of subsequent default. The court in *Doud, supra,* analyzed the risk factors in a Chapter 12 case. Those risks include the basic unpredictable nature of the agricultural economy itself which cause farmers, creditors and judges to rely upon assumptions concerning prices and yields, the value of the dollar, the weather, foreign production, interest rates and government policies, any or all of which may change to the benefit or the detriment of the debtor's Chapter 12 plan. In addition to the above-listed factors, if the plan fails and the case is dismissed, the creditors will still incur collection costs involved in the foreclosure proceedings or, in the case of personal property, replevin proceedings.

This Court concludes then that there is a risk of default in a Chapter 12 case and perhaps a risk of loss to the creditor. The creditor must be compensated for these risks and that compensation takes the form of a "risk" component to the discount rate. The Court finds that a 2% addition to the appropriate treasury bond rate will adequately compensate a conventional lender for the risk associated with a Chapter 12 reorganization. Therefore, in this and future Chapter 12 cases, a yield on a treasury bond with a remaining maturity matched to the average amount outstanding during the term of the allowed claim plus a 2% upward adjustment to account for the risk is, in

this Court's opinion, the prevailing market discount rate.

In a case in which a creditor believes this discount rate calculation is totally inapplicable or inappropriate because of special circumstances concerning the particular debtor or the particular loan involved, the Court will consider evidence concerning those special circumstances. However, in all other cases to be heard and determined after the filing of this opinion, the Court, if required to make a decision with regard to the appropriate discount rate, will follow the analysis of this opinion.