In re Joseph Anthony **BERGBOWER** and Mary Joann Bergbower, Debtors.

The **FEDERAL LAND BANK OF ST. LOUIS** and the First National Bank In Newton, Movants,

v.

Joseph Anthony **BERGBOWER**, Mary Joann Bergbower and Bob G. Kearney, Trustee, Respondents.

Bankruptcy No. BK 87–30242.

United States Bankruptcy Court, S.D. Illinois.

Sept. 8, 1987.

Gerald M. Burke, E. St. Louis, Ill., for movants.

Lawrence Eaton, Newton, Ill., for debtors/respondents.

MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on the objections to confirmation filed by the Federal Land Bank of St. Louis ("Land Bank") and the First National Bank in Newton ("First National"). On March 20, 1987, the above-named debtors filed a voluntary petition for relief pursuant to Chapter 12 of Title 11 of the United States Code. Debtors subsequently filed a Chapter 12 Plan of Reorganization, in which they allege that the secured claim of the Land Bank has a

value of $151,300.00, which they propose to pay at 8.5% interest for thirty (30) years.

The Land Bank contends that the appropriate interest rate is the market rate, and that the interest rate proposed by debtors is not reflective of current market rates for similar loans. Debtors assert that the appropriate interest rate is the rate paid on United States government securities.

■ Section 1225(a)(5)(B) provides that a court shall confirm a plan over the objection of a secured creditor if the creditor will retain the lien securing its claim, and will receive "value, as of the effective date of the plan ... [that] is not less than the allowed amount of [the creditor's] claim ..." 11 U.S.C. § 1225(a)(5)(B). "In short, this provision entitles a creditor to the present value of its property to be distributed under the plan." *Matter of Doud,* 74 B.R. 865, 867 (Bankr.S.D. Iowa 1987). The concept of "present value" has been explained by one court, in the context of a Chapter 13 case, as follows:

> To compute the "present value" of a creditor's claim requires the Court to determine what the present worth is of a proposed stream of fixed payments over the life of the plan. To accomplish this task, the payments are "discounted" to determine their present values. As a practical matter, the Court is in effect computing an interest rate to be applied to the amount of the creditor's allowed secured claim.

*In re Klein,* 10 B.R. 657, 661 (Bankr.E.D. N.Y.1981) (citations omitted).

The courts have used various methods in determining the appropriate interest rate to apply in Chapter 12 cases. *See, e.g., Matter of Doud,* 74 B.R. 865 (Bankr.S.D.Iowa 1987) (treasury bond rate plus 2% risk factor); *Lenz v. Federal Land Bank of St. Louis,* 74 B.R. 413 (Bankr.C.D.Ill.1987) (market rate); *In re Hardzog,* 74 B.R. 701 (Bankr.W.D.Okla.1987) (cost of funds); *In re O'Farrell,* 74 B.R. 421 (Bankr.N.D.Fla. 1987) (interest rate charged by the Federal Land Bank); *Matter of Wichmann,* 77 B.R. 718 (Bankr.D.Neb.1987) (treasury bond rate plus 2% risk factor). This Court finds that the appropriate interest rate is the rate on a treasury bond with a maturity that matches the term of the loan. The treasury bond rate should be determined as of the date of confirmation of the plan.

As noted in *Matter of Doud,* "yields on treasury bond rates are reported on a variety of maturity dates which permits accurate matching of the rate with the repayment periods in a Chapter 12 plan." *Matter of Doud,* 74 B.R. at 868. Furthermore, "yields on treasury bonds are simple to find since they are reported by a number of sources. The yields are not subject to manipulation because they reflect national markets and are reported daily." *Id.* In addition, "they are extremely current as the bonds are traded daily." *Id.*

■ A treasury bond is, however, a risk free investment. Therefore, the interest rate must be adjusted to reflect those risks involved in a Chapter 12 proceeding. The risks that are normally factored into interest rates include collection costs, the creditor's administrative costs, profit margin and risk of collateral depreciation. However, as noted in *Matter of Doud,* some of these risks are reduced or eliminated in Chapter 12 cases. Administrative and collection costs are reduced since the Trustee is required to oversee the affairs of the debtor. Moreover, since "Chapter 12 requires that the court must make a feasibility determination ... Chapter 12 creditors are afforded a statutory presumption ... of repayment upon confirmation." *Id.* at 869.

■ Nonetheless, certain factors in Chapter 12 cases heighten the risk of subsequent default. These factors include the unpredictable nature of the agricultural economy, the value of the dollar, the weather, foreign production and government policy. *See Matter of Doud,* 74 B.R. at 869; *Matter of Wichmann,* at 721. The creditor must be compensated for these risks. In *Doud* and *Wichmann,* the courts held that "a 2% upward adjustment adequately compensates a conventional lender for the overall risk associated with a Chapter 12 reorganization." *Matter of Doud,* 74 B.R. at 869. This Court agrees.

Therefore, in this case, a yield on a treasury bond with a maturity that matches the term of the loan, plus a 2% upward adjustment to account for the risk, constitutes the appropriate interest rate.

IT IS SO ORDERED.