**In re Melvin Leroy MUSIL, Dorothy Jean Musil, Debtors.**

**Bankruptcy No. 88–40730–12.**

United States Bankruptcy Court, D. Kansas.

Dec. 30, 1988.

William I. Schawo, Topeka, Kan., for debtors.

Lori Williams, Redmond, Redmond & Nazar, Wichita, Kan., for trustee.

Calvin Karlin, Barber, Emerson, Springer, Zinn & Murray, Lawrence, Kan., for Federal Land Bank.

Ruth Graham, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for Hardin and Josephine Mann.

Lynn Lauver, Topeka, Kan., for First Nat'l Bank in Goodland.

Merlin G. Wheeler, Emporia, Kan., for Columbia Savings Assoc.

Connie DeArmond, Asst. U.S. Atty., Topeka, Kan., for the U.S.

Carol Park Wood, Wichita, Kan., U.S. Trustee.

### ORDER DENYING CONFIRMATION

JAMES A. PUSATERI, Bankruptcy Judge.

This matter is before the Court on various objections to confirmation of debtors' proposed chapter 12 plan. The appearances are as follows: William I. Schawo for debtors; Lori Williams for the trustee; Calvin Karlin for the Federal Land Bank; Ruth Graham for Hardin and Josephine Mann; Lynn Lauver for the First National Bank in Goodland; Merlin G. Wheeler for the Columbia Savings Association; and Connie DeArmond for the USA/Department of Justice, Tax Division.

At the confirmation hearing held October 31, 1988, the Court heard testimony from various witnesses. At the conclusion of the hearing, the Court took under advisement the issue whether, with respect to the value of unencumbered assets that must be distributed to unsecured creditors under the liquidation test, debtors can define the effective date of the plan as the date of the filing of the petition. The Court, having reviewed the cases cited by debtors, is now ready to rule.

### FINDINGS OF FACT

At the time they filed bankruptcy, debtors had unencumbered growing crops, which, under Kansas law, are generally worth only as much as the input costs (in this case, approximately $30,000.00). After filing, debtors harvested the crops, which thereby rendered the crops of a substantially greater value (approximately $90,000.00 as of the date of confirmation). Debtors define effective date in their plan to mean the date their chapter 12 petition was filed. Thus, they contend that the value of the crops to be distributed to unsecured creditors under Section 1225(a)(4) is determined as of the date of the filing of the petition.

### CONCLUSIONS OF LAW

11 U.S.C. Section 1225(a) provides that the Court shall confirm a plan if, inter alia,

(4) the value, *as of the effective date of the plan,* of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title *on such date.* (Emphasis added)

The language in Section 1225(a)(4) is identical to the language in Section 1229(a)(7) and Section 1325(a)(4).

Debtors rely on a recent chapter 12 case in support of the proposition that the "effective date" of a plan is the date of the filing of the petition. In *In re Nielsen*, 86 B.R. 177 (Bankr.E.D.Mo.1988), the chapter 12 debtors, like the debtors in this case, had unencumbered growing crops at the time of filing which they had harvested by the time of the confirmation hearing. A creditor then objected to their plan proposal to pay only the input value of the crops to the unsecureds. Relying on an 8th Circuit case, the *Nielsen* court held that "on such date" meant the date the petition was filed, and thus overruled the objection of the creditor.

This Court disagrees with *Nielsen*, for several reasons. First, *Nielsen* misreads the 8th Circuit case it says bound it to its ruling. In *Hollytex Carpet Mills v. Tedford*, 691 F.2d 392 (8th Cir.1982), debtors elected federal exemptions at the time of filing their chapter 13 petition. Their plan was confirmed. After confirmation, the state of debtors' residence opted out of the federal exemption scheme. When debtors moved to modify their confirmed plan, certain creditors objected, contending that the modification did not meet the best interests of creditors test, because if debtors were liquidated on the date of the modification, the creditors would receive more under chapter 7 with the state's less favorable exemptions. The Eighth Circuit affirmed the decision of the lower courts overruling the objection. The court noted that the fact a modification was filed did not change the effective date of the plan for the purpose of electing exemptions. The *Hollytex* court thus implies that the effective date is the date of confirmation. In its ruling, however, the court quoted language from *Matter of Statmore*, 22 B.R. 37 (Bankr.D. Neb.1982), which provided that the date of filing the petition is "the cleavage date" in defining rights of the debtor and his creditors. *Hollytex*, 691 F.2d at 393, quoting *Statmore*, 22 B.R. at 38. It is the cleavage date language that apparently confused the *Nielson* court as to the true holding in *Hollytex*.

By comparison, in *Statmore*, debtors owned unencumbered assets of $6,000 as of the date they filed their chapter 13 petition. At confirmation, debtors contended their unencumbered assets had "changed" to exempt property, and proposed to pay nothing to unsecured creditors in liquidation value, relying on the "effective date" language of Section 1325(a)(4). The court in *Statmore* does not explain how or why debtors' assets "changed." Nonetheless, the court rejected debtors' interpretation of "effective date," pointing out that parties' rights with respect to exemptions, preferences and fraudulent conveyances were fixed as of the date of the petition.

As this Court views it, *Statmore* and *Hollytex* stand only for the proposition that "the effective date of the plan" language in Section 1325(a)(4) does not override the rule in Section 522 that exemptions be determined as of the date of the filing of the petition. Conversely, *Statmore* and *Hollytex* do not state that the effective date for purposes of determining liquidation value (after exemption amounts have been factored in) must be determined as of the date of the filing of the petition. Because *Nielsen* misses this distinction, its reliance on *Hollytex* is misplaced. Accord *Matter of Bluridg Farms*, 93 B.R. 648 (Bankr.S.D. Ia.1988) (Jackwig, C.J.).

Second, even if *Hollytex* and *Statmore* legitimately supported debtors' interpretation, this Court, based on a plain understanding of the term "effective," declines to follow them. The term "effective date" is not defined in the Code. "Effective" in common parlance means "ready for service or action; to effect." "Effect" in turn means "a quality or state of being operative." Webster's New Collegiate Dictionary (1975). Both logically and by definition, the effective date of a plan cannot exist before the date the plan is filed. In other words, a plan cannot be "ready for action" or "operative" before it exists.

Regardless of logic and definition, to define "effective date" as the date the case is filed would be to create disharmony within Sections 1129, 1225 and 1325 as well as with other sections of the Code.

For example, Section 1129(a)(9)(B)(ii) provides under certain circumstances for cash payments to priority claimants "on the effective date of the plan." It is ludicrous to suggest that a debtor must make those payments on the date he files the petition. To like effect are Sections 1129(a)(12) (quarterly fees owed the U.S. Trustee must have been paid "or the plan provides for the payment of all such fees on the effective date of the plan") and 1129(a)(13) ([t]he plan provides for the continuation after its effective date of all retiree benefits"). Similarly, Section 1129(a)(9)(B)(i), and (b)(2)(A)(i)(II) and (b)(2)(B)(i) require interest payments in order to give the respective claim and interest holders the "value, as of the effective date of the plan, equal to the allowed amount of such claim." However, to read these sections as requiring interest payments on the date of the filing of the petition runs afoul of Sections 502 and 506, which preclude the post-petition running of interest on claims unless a claim is oversecured.

The Court has not been asked to determine definitively when the effective date of a plan should be. However, it is the Court's holding, based on the reasons enumerated above, that a debtor may not define the effective date as the date of the filing of the petition, and that the effective date can be no earlier than the date the first confirmable plan is heard. Cf *Matter of Milleson,* 83 B.R. 696, 699 (Bankr.D. Neb.1988) ("effective date" held to be on or after the date on which the confirmation ordered is entered).

In this case, it is clear that debtors cannot possibly cash flow the some $90,000 this Court's ruling would require them to cash flow. Accordingly, the plan is denied confirmation and the case is ordered dismissed.

IT IS SO ORDERED.