**In re Clement E. BECKER and Marjorie A. Becker, Debtors.**

**Bankruptcy No. 86–41840–12.**

United States Bankruptcy Court,
D. Kansas.

July 1, 1994.

---

Jan Hamilton, Topeka, KS, for debtors.

Calvin J. Karlin, Lawrence, KS, for Creditor Bank.

Eric Rajala, Trustee, Overland Park, KS.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court pursuant to the objection filed by Federal Land Bank to the Report by Debtors of All Priority Tax Claims Paid Pursuant to Debtors' Confirmed Plan and Request for Discharge. Clement E. Becker and Marjorie A. Becker ("debtors") appear by and through their attorney, Jan Hamilton. Federal Land Bank [1] appears by and through its attorney, Calvin Karlin.

[1] The Court notes that the Bank is referred to throughout the pleadings as the Federal Land Bank and as Farm Credit Bank. For purposes of this Memorandum Opinion, the Court will refer to the Bank as the Federal Land Bank.

[2] In Schedule A-1, the Beckers listed: income and FICA taxes owed to the IRS in the "estimated" sum of $5000 for tax year 1986; income

### JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

### FINDINGS OF FACT

Based on the parties' stipulations, the Court finds as follows.

1. Clement and Marjorie Becker filed a Chapter 12 bankruptcy petition in 1986. In their schedules they listed as priority debts, taxes owing to the Internal Revenue Service, the State of Kansas, the Nemaha County Treasurer, the Buchanan County Collector of Revenue and the City of St. Joseph, Missouri. The Beckers' scheduled priority claims totalled $33,195.13, which included "estimated" amounts owing the IRS and State of Kansas.[2]

2. The Chapter 12 plan stated in pertinent part:

4. *Priority Creditors:* Creditors holding claims entitled to priority under 11 U.S.C. § 507 shall be paid in full in deferred cash payments as set out in Exhibit A(1) hereto.

. . . .

9. *Application of Payments:* The trustee shall apply all payments made on behalf of the Debtors, after deduction of the statutory fees, in the following order:

a) First, prorata to the payments to secured creditors specified in Exhibit A(2).

b) Second, prorata to the payment of claims entitled to priority under § 507 as specified in Exhibit A(1).

c) Finally, prorata to the payment of all unsecured claims.

3. Exhibit A(1) stated that the debtors anticipated tax liability of approximately $22,-362.13. Schedule A-1 was attached to the plan. The plan noted that with respect to

taxes owed to the State of Kansas in the "estimated" amount of $15,000 for tax year 1986; real estate taxes owed to Nemaha County in the sum of $12,330.13 for 1983–1986; $755 owed to the City of St. Joseph for real estate tax and property clean up for 1986; tax owed to Buchanan County in the amount of $110 for 1986 real estate taxes.

the priority claims "these figures are lower than included in Schedule A–1 because post-petition payments to the IRS have been made."

4. Exhibit A(3) to the plan provided that: All unsecured creditors shall be paid their proportionate share of the disposable income available after the payment of living expenses, business expenses, priority debts, costs of administration, and payments to secured creditors. The amount estimated to be available to pay the unsecured creditors is presently unknown because the date of confirmation is uncertain. A liquidation analysis at confirmation or at such other time as may be ordered by the Court will be provided. In any event, the amount to be distributed to the unsecured creditors shall be no less than the liquidation value of the Debtors' estate, as of the date of the confirmation of the plan.

5. Federal Land Bank objected to confirmation of the plan on several grounds. It did not object to the characterization, classification or treatment of priority claims.

6. An order of confirmation was entered on August 5, 1987, relative to a hearing held on April 21, 1987. The confirmation order provided in pertinent part that the plan as approved provides for the following payments:

2. Priority expenses: Trustee's fees, 10% of total priority expenses under the plan

Debtors['] tax liability estimated in the amount of $22,362.13, plus penalty and interest of $865.00 due to the City of St. Joseph, Missouri. Federal and State income taxes of $9,000.00 have been paid prior to the confirmation hearing but constitute a payment of a plan indebtedness and subject to the Trustee's fees of $900.00. The remaining taxes, i.e. the real estate property taxes and taxes owed to the City of St. Joseph, Missouri will be satisfied by September 15, 1987. Debtors shall pay to the Trustee the estimated sum of $865.00 for payment of the real estate taxes due to the City of St. Joseph, Missouri, plus Trustee fees of 10%. Said taxes will be paid by December 1, 1987.

7. The confirmation order provided that Federal Land Bank had a $357,119.05 unsecured claim and a $165,000 secured claim. Prior to the confirmation hearing, Federal Land Bank had filed a proof of claim reflecting those figures as the unsecured and secured portions of its claim.

8. None of the scheduled priority creditors ever filed a proof of claim. The trustee and the debtors failed to file a proof of claim on behalf of any of the scheduled priority creditors. The claims bar date occurred after the confirmation hearing but before the confirmation order was entered.

9. In 1991, the trustee filed a motion for termination of Chapter 12 proceedings and for discharge of debtors.

10. The Federal Land Bank objected to the motion for termination and discharge on the basis that the trustee had only $797.49 available to distribute to unsecured claimants, while the confirmation order had indicated that there would be approximately $29,928.00 available for distribution, first to priority claimants in the approximate sum of $22,362.13, and second to unsecured claimants.

11. The Court ordered the debtors to provide a report to the trustee and the Federal Land Bank of all priority tax claims paid pursuant to the plan. The Court stated that the Federal Land Bank and trustee would then have an opportunity to object to the priority of any such payment. "Discharge shall not be granted until the issues regarding payment and the amount due to unsecured creditors is resolved by agreement of the Federal Land Bank, debtors and the trustee or by order of the court."

12. Thereafter, the debtors filed a report and a supplemental report which indicated that they had paid $9000.00 to the IRS prior to the confirmation hearing and another $3854.79 after the hearing but before entry of the confirmation order. The sum of $12,854.79 constituted full payment of the debtors' 1986 federal income tax liability plus interest. After entry of the confirmation order, the debtors paid $874.35 to the City of St. Joseph for "Special Tax Bills" for "Weed Cutting and Removal" and "Demolition and/or Repair of Dangerous Buildings." The debtors also paid $14,850 ($13,500 plus the trustee's fee) to the trustee for distribution

to the Nemaha County treasurer.[3] The debtors' report stated that they had remaining $797.49 available for distribution to the unsecured creditors.

## CONCLUSIONS OF LAW

The debtors' plan in this case represented that in a Chapter 7 case, upon liquidation of all nonexempt assets, there would be $29,928.00 available for distribution to priority and unsecured creditors. The debtors' plan complied with 11 U.S.C. § 1222(a)(2) by providing for payment in full of all claims entitled to priority under § 507. The debtors' plan further complied with § 1225(a)(4) by providing for payment of an amount not less than the amount that would be paid on each allowed unsecured claim if the debtors' estate were liquidated under Chapter 7, the so called "best interests of creditors" test. The plan established the amount available in a liquidation case, $29,928, and then provided that § 507 priority claims would be paid first, and unsecured claims second. While it was evident from the face of the plan that the debtors did not know with certainty, the amount of the priority claims, the plan itemized the priority debts, in some instances estimating the amount of the claim, in other instances providing what appeared to be a sum certain, and then estimated the total sum of priority claims as $22,362.13.

■ The plan was confirmed prior to the claims bar date. The priority creditors failed to file proofs of claim; the trustee and debtor failed to file proofs of claim on their behalf. An unsecured creditor is not entitled to any distribution under a Chapter 12 plan unless it files a proof of claim and its claim is allowed. Rule 3002 of the Federal Rules of Bankruptcy Procedure mandates that an unsecured creditor file a proof of claim in order to receive distribution under a Chapter 12 plan. Alternatively, Rule 3004 allows for an unsecured creditor to receive distribution if the debtor or trustee files a claim on the creditor's behalf. These rules govern the allowance of unsecured priority claims as well. *See In re Turner,* 157 B.R. 904 (Bankr.

N.D.Ala.1993); *In re Nohle,* 93 B.R. 13 (Bankr.N.D.N.Y.1988).

Thus, the debtors paid a number of creditors who were not entitled to any distribution under this plan. Federal Land Bank, the objecting creditor, filed a proof of claim and its claim was allowed. Given Federal Land Bank's compliance with the rules for claims allowance, it is ironic, then, that creditors who failed to file claims have been paid in full out of monies that would otherwise have been available to Federal Land Bank. The debtors have paid more than $31,000 to the scheduled priority creditors, over the last five years. A strict interpretation of Rules 3002 and 3004 would result in the debtors having to pay, in addition to the $31,000 they have already paid, $29,928 prorata to the unsecured creditors, despite the debtors' diligent payment of priority creditors. This harsh result is not one urged by Federal Land Bank, who while complaining that creditors who failed to file claims were paid in full, withdraws its objection to the debtors' $4239 payment to the State of Kansas for 1986 taxes. In any case, the case at bar illustrates the potentially detrimental results to a debtor when the confirmation process is allowed to substitute for the claims allowance process.

■ To make matters worse, some of these so-called priority creditors, did not in fact qualify for priority treatment. The debtors acknowledge this in the parties' stipulation that "... certain of the taxes which were shown on Exhibit A to the bankruptcy schedules and noted in the plan were apparently not priority taxes ..." The debtors paid the City of St. Joseph for "Special Tax Bills" for weed cutting and removal and for demolition and repair of dangerous buildings. While these "Special Tax Bills" indicate that the sums owed are for a "tax," in determining whether these obligations are truly taxes, the Court is not required to accept the creditor's characterization. Whether or not something is a property tax within the meaning of § 507(a)(7)(B) is a federal question. The Court is not bound by the creditor's denomi-

---

**3.** The debtors also paid $4276.48 to the State of Kansas for 1986 taxes but Federal Land Bank withdrew its objection to that payment.

nation, but must analyze whether "its incidents are such as to constitute a tax within the meaning of [the Bankruptcy Act]." *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941). The "Special Tax Bills" state that the debtors are being assessed the costs of weed cutting and removal, and demolition and repair for work actually done on their property. From the face of these bills, it is apparent that the debtors were being charged for services rendered. The bills were not for a tax assessed against all property owners for their respective share of costs or programs in the community. Given this distinction, the "Special Tax Bills" were not for a property tax under § 507(a)(7)(B). As the court explained in *State of New Jersey v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906), "[A] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government." Thus, the City of St. Joseph was not a priority creditor, and was not entitled to payment as a priority claimant. The parties stipulated that the debtors paid the City of St. Joseph $580.46.[4] That sum should have been retained in the pool of monies for distribution prorata to unsecured creditors.

■ The debtors also paid $14,850 to the trustee for distribution to the Nemaha County Treasurer. After deducting his fee, the trustee distributed $13,500 to the county. Attached to the parties' stipulation, are redemption certificates detailing the taxes owed per year on each tract of real estate. Federal Land Bank objects that the redemption certificates illustrate that the county received priority treatment on nonpriority taxes, to wit: taxes owing for tax years 1983 and 1984 when only the taxes owing for tax years 1985 and 1986 were entitled to priority treatment under § 507(a)(7)(B). That section limits priority treatment to property taxes "assessed before the commencement of the case

and last payable without penalty after one year before the date of the filing of the petition." The debtors filed their bankruptcy petition on December 18, 1986; and Federal Land Bank concedes that the taxes for 1983–1986 were assessed before the filing of the petition. However, the second prong of § 507(a)(7)(B) requires that the taxes have been payable without penalty sometime within the year before the bankruptcy was filed, in this case between December 18, 1985 and December 18, 1986. Federal Land Bank concedes that the 1985 and 1986 taxes meet the test, having been payable without penalty sometime during the period after December 18, 1985. However, the Court finds that with respect to the 1983 and 1984 taxes, the redemption certificates would indicate that the taxes were incurring interest for some time period and were not payable without penalty in the one year period before the bankruptcy. In fact, the debtors' property had been sold at a tax sale on January 4, 1984, presumably for the delinquent 1983 taxes. Therefore, the Court finds that the 1985 and 1986 taxes qualified for priority treatment, but the 1983 and 1984 taxes were only entitled to treatment as general unsecured claims.[5] According to the parties' stipulation, $5077.87 of the $13,500 distributed to the county was for 1985 and 1986 taxes. Therefore, the remaining $8422.13 was for the 1983 and 1984 taxes and should have been retained in the pool of monies for distribution prorata to unsecured creditors.

■ The debtors paid to the Internal Revenue Service a total of $12,854.79. They paid $9000 prior to the confirmation hearing; and $3854.79 after the confirmation hearing but before entry of the confirmation order. Federal Land Bank argues that the Court should not treat either of these payments as a priority payment; and particularly the $9000 pay-

---

4. Upon closer examination of the cancelled checks written by the debtors to the City of St. Joseph, Federal Land Bank argues that the debtors actually paid $496.53. Unless the parties amend their stipulation that $580.46 was paid, however, the Court is bound to rely on their stipulated figure of $580.46.

5. The Court stresses that it is not deciding the issue of whether any of these priority creditors were entitled to share in the distributions under the plan. None of the priority or so-called priority creditors had an allowed claim. However, since none of the parties takes the position that they are disqualified from any payment, the Court proceeds to analyze their proper treatment as if they had in fact filed claims.

ment should not reduce the $29,928 the debtors are required to distribute under the plan.

The parties each urge the Court to deem the confirmation order binding on this matter. Federal Land Bank focuses on that part of the confirmation order that states:

> Liquidation analysis would suggest $29,928.00 worth of unsecured assets. Cash payments equal to that amount for payment of unsecured priority taxes and general unsecured claims, will be paid over the three year period.

The debtors focus on another passage in the confirmation order, which was previously quoted in the Court's Findings of Fact:

> Debtors['] tax liability estimated in the amount of $22,362.13, plus penalty and interest of $865.00 due to the City of St. Joseph, Missouri. Federal and State income taxes of $9,000.00 have been paid prior to the confirmation hearing but constitute a payment of a plan indebtedness and subject to the Trustee's fees of $900.00.

■ Federal Land Bank argues that particularly with respect to the $9000 paid prior to confirmation, that sum should not be deemed as included within the $29,928 that "will be paid" prospectively, over the life of the plan. The debtors argue that the $9000 was a plan payment and that Federal Land Bank having failed to object to the characterization or classification of any priority creditor, is bound by the term of the plan that provides that the preconfirmation payment is a plan payment to the IRS.[6]

■ The confirmation order lends itself to confusion, by indicating that $29,928 will be paid in the future, to priority and unsecured claimants over the next three year period, while also indicating that the $9000 preconfirmation payment to the IRS is a plan payment. However, the Court need not decide whether these two passages can be con-

strued *in pari materia.* In determining whether the debtors are entitled to termination of this plan and discharge, all the court need decide is whether they have satisfied the best interest of creditors test with respect to the unsecured creditors. In the context of a Chapter 12 case, the Court thinks that the best interests test should be applied as of the date of confirmation. Collier on Bankruptcy notes that:

> Using the effective date of the plan, rather than the petition date, makes sense because it allows an accurate comparison of the amount proposed to be paid under the plan with the amount that a creditor would receive from an actual liquidation. Because of the delay inherent in the bankruptcy process, there are likely to always be changes in the value of the debtor's assets between the time the case was filed and the time of the confirmation hearing. If the debtor's plan is not confirmed, and the debtor's estate were actually liquidated under chapter 7, the value of any assets acquired during the pendency of the case would be available for distribution to creditors. Similarly, any assets that were lost during that period would not be available. By making the comparison as of the effective date of the plan, the best interests test allows a meaningful comparison to be made.

5 Collier on Bankruptcy ¶ 1225.02 (15th ed. 1994).

Furthermore, the Bankruptcy Code sets forth the best interests test and provides that the court shall confirm a plan if:

> the value, *as of the effective date of the plan,* of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title *on such date.*

---

6. Given that the priority creditors had the responsibility to file their claims; and failing that, the debtors and the trustee could have filed claims on their behalf, the Court cannot find that Federal Land Bank slept on its rights. At the time of the confirmation hearing, the claims bar date had not passed and it would have been an exercise in futility for Federal Land Bank to object to the schedules of priority creditors. Furthermore, although Federal Land Bank could have policed the claims files over the next five years, as a practical matter, most creditors do not have the means to accomplish that. This is one more reason why the confirmation process should not be allowed to substitute for the claims allowance process.

11 U.S.C. § 1225(a)(4) (emphasis added). In this case, the order of confirmation provides that the debtor has complied with this subsection, and specifically states:

That the value as of the effective date of the plan, *(the date of confirmation)* of the property to be distributed under the plan on the account of each allowed unsecured claim is not less than the amount, each allowed unsecured claim would be paid if the estate were liquidated under Chapter 7. (Emphasis added).

The Court agrees with those cases holding that the effective date of the plan should not be defined as the date of the filing of the petition. *See, e.g., In re Musil,* 99 B.R. 448, 450–51 (Bankr.D.Kan.1988) (holding that the "effective date" may not be defined as the date of the filing of the petition, and that the effective date can be no earlier than the date the first confirmable plan is heard, and noting that to define "effective date" as the date the case is filed would create disharmony within §§ 1129, 1225 and 1325 as well as other sections of the Code.)

As of the date of confirmation, there was $29,928 in unencumbered, nonexempt assets. Thus, this amount would be available in a Chapter 7 case for distribution, first to priority claimants, second to general unsecured claimants. In a Chapter 7 case, the IRS, as a priority claimant, would have been entitled to receive the $9000 before any distribution was made to the unsecured creditors. Thus, the fact that the debtors paid $9000 before confirmation rather than after is inapposite. Federal Land Bank argues that there must have actually been $38,928 in unencumbered nonexempt assets; where else did the debtors get the $9000 to pay the IRS prior to confirmation? The Court cannot speculate or assume, however, that the $9000 came from nonexempt assets. Thus, the Court concludes that preconfirmation payment to the IRS did not reduce the pool of monies available to unsecured creditors; the IRS was entitled to full payment before the unsecured creditors could receive anything. For the same reason, the $3854.79 the debtors paid to the IRS after the confirmation hearing but before the confirmation order cannot be deemed money that should be distributed to the unsecured creditors pro rata.

As discussed above, the debtors have failed to complete the plan to the extent that they have failed to distribute prorata to the unsecured creditors, the $580.46 paid to the City of St. Joseph and the $8422.13 paid to Nemaha County. Thus, before the debtors can be discharged and their case terminated, they must pay to the trustee for distribution, the total sum of $9002.59. The trustee is precluded from deducting a fee from this sum, to the extent that he has already collected a fee on prior distributions of these sums to the City of St. Joseph and Nemaha County.

**IT IS THEREFORE ORDERED BY THE COURT** that Federal Land Bank's objection to the debtors' request for discharge shall be granted to the extent that debtors shall not receive a discharge until they pay $9002.59 to the trustee for distribution to unsecured creditors.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.