MERV E. HILPIPRE AUCTION
CO., Plaintiff,

v.

SOLON STATE BANK, SOLON,
IOWA, Appellant,

Wayden's Heavy Haulers, Inc., Iowa
Department of Job Service, and
Carl McClain, Defendants,

Johnson County, Iowa, Appellee.

No. 69585.

Supreme Court of Iowa.

Jan. 18, 1984.

Marion R. Neely of Neely Law Offices, Iowa City, for appellant.

J. Patrick White, Johnson County Atty., for appellee.

Considered by McGIVERIN, P.J., and LARSON, SCHULTZ, CARTER and WOLLE, JJ.

SCHULTZ, Justice.

Solon State Bank, a perfected secured creditor, appeals from a district court ruling giving Johnson County priority to auction proceeds for taxes assessed on manufacturing equipment for fiscal years 1980–81 and 1981–82. We hold that the county has priority to the proceeds in the amount of its taxes for fiscal year 1980–81 while the bank has priority to the remaining proceeds.

Long Metal Products, Inc., was a manufacturing concern operating in Johnson County, Iowa. As shown by a deed recorded on April 2, 1981, Long sold the land and buildings where the firm was located to 218 Associates. Despite this transfer, the firm retained ownership of its manufacturing equipment and continued its operation at this location until approximately one week before the equipment was sold at an auction.

Since 1975, Solon State Bank has provided financing for Long. In return, Long executed several security agreements giving the bank a security interest in, among other things, Long's machinery and equipment used for manufacturing. All of these security interests were properly perfected, and continuation statements were filed when necessary.

The firm apparently ran into financial difficulties, and Long contacted Hilpipre Auction Company sometime in August to arrange a public auction on September 9, 1981. The bank was notified and consented to the sale.

On September 4, 1981, the Johnson County Attorney's Office sent Hilpipre a letter informing him that county taxes were owing on the property and that he should take appropriate action to ensure payment of the taxes or inform prospective purchasers of the tax lien. On the day of auction, three garnishments by other creditors of Long were also served on Hilpipre. The auction was held, and the proceeds were distributed to Solon State Bank except for some $12,631.36 which was withheld and deposited into an escrow account. Hilpipre then filed an interpleader action against the bank, Johnson County and the three garnishers to determine the priority of their claims to the escrow funds.

The action in equity was tried to the court. The court found that Solon Bank had a properly perfected security interest, antedating the other creditor's liens, which continued in the cash proceeds obtained from the sale. Iowa Code § 554.9306(3)(b). It concluded that the bank's security interest was superior to all claimants except the county. The court, on the authority of Iowa Code sections 427A.1(1)(e) and 445.28, held that Johnson County had a superior lien for the two tax years in question and that the lien attached to the proceeds.

Although machinery normally would be characterized as personal property, Iowa Code section 427A.1(1) provides that "for purposes of property taxation only, the following shall be assessed and taxed ... as real property: .... e. Machinery used in manufacturing establishment." Since machinery is legislatively treated as real estate, the court found section 445.28 applicable. This statute provides in relevant part that: "Taxes upon real estate shall be lien on the real estate against all persons except the state." *Id.* Thus, the court reasoned the county had a superior lien on the property and even though the legislature had not expressly provided that the lien attached to the proceeds, such an implication was necessary to give effect to the legislature's intent that the county's claim for taxes should be satisfied before all other claimants except the state.

Only the bank appealed from the ruling affording the county priority to the proceeds in the amount of its taxes. On appeal, it claims that (1) no effective tax lien is created on machinery not being used in manufacturing that is sold prior to the date the tax is actually levied; (2) no valid tax lien attaches to machinery assessed as real estate in the name of one owner when a different owner is shown on the assessor's records and the tax list in the office of the county auditor prior to July 1, the date the lien attaches; (3) when machinery used in manufacturing establishments is sold, the tax lien remains with the property rather than attaching to the proceeds.

Pursuant to Iowa Rule of Appellate Procedure 4, our review is de novo. We give weight to the trial court's findings but are not bound by them. Iowa R.App. P. 14(f)(7).

I. The bank's first attack on the validity of the ruling giving the county priority is principally directed at the court's award for the 1981–82 taxes. Essentially, it contends no lien for these taxes had attached at the time of sale since the machinery was sold in September of 1981 before the 81–82 taxes were actually levied. We must agree.

The claims accorded priority were based on taxes for the fiscal years running from July 1, 1980, to June 30, 1981, and July 1, 1981, to June 30, 1982. The assessed value of the property for these two years was determined on January 1, 1980, and January 1, 1981, respectively. The 1980–81 taxes were levied in March of 1981 while the 1981–82 taxes were not levied until the following year. The first half of the taxes for 1980–81 became delinquent on October 1, 1981, and the second half on April 1, 1982. Similarly taxes for 1981–82 would not become delinquent until October 1, 1982, and April 1, 1983.

▬ Although the assessment for the 1981–82 taxes was made in 1981 before the sale, the levy and lien did not come into being until 1982. Iowa Code § 444.9 (1979) as amended by Acts 1980 (68 G.A.) Ch. 1136, sec. 16 and repealed by Acts 1981 (69 G.A.) Ch. 117, sec. 1097. Assessment

merely enters the property subject to taxes and its taxable valuation on the tax rolls. Levy creates the obligation. No lien arises until the tax is actually levied. *See e.g., Gates v. Wirth,* 181 Iowa 19, 23, 163 N.W. 215, 218 (1917); *In re Estate of Luke,* 184 N.W.2d 42, 48 (Iowa 1971). Consequently, at the time of sale, no tax lien for the 1981–82 taxes had attached to the property.

■ The county treasurer does have statutory authority to collect personal property taxes in advance of levy whenever property is about to be removed from the county. Iowa Code § 445.6. No similar authority is available for the collection of real estate taxes. In sum, the county has no claim to the sale proceeds for payment of the 1981–82 tax lien which came into being after the sale. Since we have negatively disposed of the county's claim for the 1981–82 taxes, our discussion of the bank's remaining assignments of error will be limited to the county's claim for the 1980–81 taxes.

II. The bank next attacks the propriety of the levy for the 1980–81 taxes. It contends no lien attached to the machinery since the property was assessed in Long's name but 218 Associates was listed as the owner on both the assessor's records and county auditor's tax list as of July 1, 1981, the date the lien attached.

The machinery was properly valued and assessed against Long as of January 1, 1980. However, after notice of assessment had been mailed to Long, the assessor, and subsequently the county auditor and treasurer erroneously listed the machinery under the name of 218 Associates. This occurred because of the property transfer from Long to 218 Associates which included the land and buildings but not the machinery. The assessor's record was maintained on a card containing all of Long's property assessed as real estate with a breakdown of each valuation. When the land was sold and record of transfer was made on April 2, 1981, the assessor changed the name on the card from Long to 218 Associates. The assessor did not remove the machinery from the old card nor

prepare a separate card for the machinery listing Long as owner. Therefore, at the time the levy was made in March of 1981, the property was listed in all of the county offices under Long; however, when the lien attached on July 1, 1981, Iowa Code section 445.30, the property was listed under 218 Associates. Thus the tax statement prepared by the treasurer for the first half of the taxes due on September 30, 1981, listed 218 Associates as the taxpayer.

■ The trial court took the position that even though there was a title change, taxes are levied on the property rather than upon the titleholder; thus, Johnson County had a valid tax lien on the industrial equipment sold at the auction. We agree.

■ Real estate taxes constitute a lien upon the property. Iowa Code § 445.28. A tax upon real property is a charge upon the real estate and not a personal obligation of any person. *Laubersheimer v. Huiskamp,* 260 Iowa 1340, 1344, 152 N.W.2d 625, 627 (1967); *In Re McMahon's Estate,* 237 Iowa 236, 238, 21 N.W.2d 581, 582, (1946). In the present case assessment and levy was made at the time the machinery was owned by Long. The levy was against the machinery and the fact that the titleholder's name subsequently was changed on the county's record is irrelevant. Additionally, the bank as a prior lienholder rather than a sale purchaser has no standing to complain of the inconsistency in title on the county tax records.

■ III. In awarding the county priority, the trial court determined that tax liens enjoyed priority over a lien created by the security agreement. Real estate taxes become liens on the assessed real estate against all persons except the State and are first liens superior to all other encumbrances. Iowa Code § 445.28. *Barker's, Inc. v. B.D.J. Development Co.,* 308 N.W.2d 78, 83 (Iowa 1981); *see Linn County v. Steele,* 223 Iowa 864, 868, 273 N.W. 920, 921 (1937). Even though the bank's perfected security interest antedated the 1980–81 tax lien, the trial court was correct

in its conclusion that the county's lien was superior to the bank's security interest.

The trial court also determined that the tax lien followed and attached to the sale proceeds. The bank disputes this determination and contends real estate tax liens remain a charge on the property and do not follow sale proceeds. Further, it argues that the county lacks authority to collect taxes from sale proceeds but rather is limited to a statutory in rem proceeding against the property.

■■■ We agree no ordinary action is available to the county for the collection of real estate taxes. *See Shearer v. Citizens' Bank*, 129 Iowa 564, 567, 105 N.W. 1025, 1026 (1906). Although Iowa Code section 445.3 allows the county to bring an action, in addition to ordinary remedies, for the collection of personal property taxes, no statutory provision is made for the collection of real estate taxes except through enforcement of the lien. Where a specific remedy is provided for tax collection, such remedy must be followed; the statutory remedy is exclusive. *Hawkeye Life Insurance Co. v. Valley-Des Moines Co.*, 220 Iowa 556, 567, 260 N.W. 669, 675 (1935). The tax on real estate is not a personal obligation or a debt of any person, and the proceedings for collection of taxes is one in rem. *In Re Estate of McMahon*, 237 Iowa 236, 239–40, 21 N.W.2d 581, 582–83 (1946). The specific statutory remedy for collection of real estate taxes is by way of the annual tax sale. Iowa Code § 446.7.

■■■ While our statutory scheme for the collection of real estate taxes is limited to an in rem proceeding and provides no means to transfer the lien from the property to the sale proceeds, we nevertheless conclude the county is not prohibited from asserting its claim against the proceeds in the peculiar facts of this case.

■■■ Long obviously had severe financial problems as evidenced by the bank president's testimony that the bank had a deficiency after the sale of $70,000–75,000 with additional unpaid interest of $15,000–20,000. Other unsatisfied garnishments by Long's judgment creditors totaled over $7,000. Long had earlier sold his real estate and buildings and then secured permission from the bank to sell the machinery and equipment. He contracted with Hilpipre to sell the property, and Hilpipre again secured bank approval for the sale. In these circumstances, it is apparent that Long did not have the funds to clear the property of liens before the sale. It is generally held that a vendor of chattels sold at auction impliedly warrants that he has good title to the property sold unless he specifically disclaims such a warranty. 7 Am.Jur.2d Auctions and Auctioneers § 50 (1980). This general rule is consistent with Iowa Code section 554.2312 which provides that in a contract for sale, there is a warranty by the seller that "b. The goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge." The bank alleviated this problem to a great extent when it consented to the sale and freed the machinery from its security interest. Iowa Code § 554.9306. No doubt the bank was content in the fact its security interest continued in the proceeds of the sale. *Id.* This arrangement, however, did not free the property from the tax lien which had first priority.

A mechanism to solve the problem of how to provide the buyer a lien-free title did exist in the auction contract. This contract provided in pertinent part that:

4. ... Customer warrants and guarantees title on all items sold, and should Auctioneer incur any expense or be required to pay any monies because of Customer's failure or inability to warrant and guarantee title, Customer will reimburse Auctioneer for such expenses incurred and monies paid....

5. ... Auctioneer shall have a lien upon the items sold and the proceeds of said sale for his commission, and all expenses, including attorney fees, if any, as referred to in Paragraph 7, and Customer hereby grants to Auctioneer a security interest in and to said proceeds for said amounts.

. . . . .

7. Auctions sometimes bring about problems or disputes with creditors of Customers or lien holders. If such disputes or problems should arise, Auctioneer may, after receiving competent legal advice advising him so to do, withhold delivering the net proceeds of the sale to Customer for a period of thirty (30) days in order to resolve such disputes or problems, and if in that connection or for any other reason Auctioneer should incur costs or expenses, including legal fees in connection with any problems or disputes arising as a result of this agreement or the sale, such costs and expenses shall be deducted from the net sale proceeds prior to delivery of the proceeds to Customer.

To summarize, Long guaranteed title on all of the items sold; agreed to indemnify the auctioneer for any expenses or monies incurred because of a failure to guarantee title; gave the auctioneer a lien on all items sold not only for his commission but also for expenses; and further allowed the auctioneer to withhold proceeds of the sale in order to resolve disputes arising out of the agreement. The fair tenor of this agreement is that the auctioneer was authorized to sell the property without restrictions on title with the right to withhold money to clear any outstanding liens that must be satisfied in order to give good title.

Given this agreement, we conclude the auctioneer functioned as an agent of both seller and buyer with authority to use the proceeds of the sale to pay lienholders in order to ensure good title to the property in question. *See* 7 Am.Jur.2d Auctions and Auctioneers § 55 (1980). Since the county's tax lien was superior, good title could not be passed without satisfying this lien initially.

While the bank agreed to the sale, there is no showing they were aware of the terms of the contract with auctioneer. Despite this lack of knowledge, the bank has no valid complaint against this contractual arrangement. Initially, its lien was second-ary to the county. On a foreclosure sale, the county would have priority to the proceeds. While this is not a foreclosure but a private sale, it is obvious the sale price would be reduced at the very least by the amount necessary to satisfy the tax lien if the property was sold subject to the lien. Since a lien existed on all of the numerous items sold, the uncertainty as to title would greatly have inhibited their saleability. In this instance, the sale bill indicates approximately 300 items were sold with a price range on the items from $.50 to $28,000. Consequently, the bank was not damaged by selling the property free of liens with the provision the auctioneer would withhold the proceeds to satisfy the liens. The trial court was correct in ordering the withheld proceeds to first be applied to the 1980–81 tax lien.

The portion of the decree ordering payment from the sale proceeds of the 1981–82 taxes in the amount of $3,351.72 plus interest and penalty for one month of $16.76 for a total sum of $3,368.48 is reversed. The remaining portion of the judgment ordering payment of 1980–81 taxes in the amount of $3,845.63 plus interest and penalty of $384.57 for a total sum of $4230.20 is affirmed. Costs of this appeal are assessed equally to the parties.

REVERSED IN PART; AFFIRMED IN PART.