**In the Matter of Russell and Priscilla WOBIG, Debtors.**

**Bankruptcy No. BK86–3615.**

United States Bankruptcy Court, D. Nebraska.

March 18, 1987.

David H. Hahn, Lincoln, Neb., for debtors.

Robert J. Bothe, Omaha, Neb., for Bank.

Richard Lydick, Omaha, Neb., Trustee.

## MEMORANDUM OPINION RE HEARING ON CONFIRMATION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

A final evidentiary hearing on the confirmability of the modified plan of reorganization filed by the debtors on February 23, 1987, was held in Omaha on February 23, 1987. Appearing on behalf of the debtors was David Hahn of Lincoln, Nebraska. Appearing on behalf of The Anchor Bank, a secured creditor and objecting party, was Robert Bothe of Omaha, Nebraska.

Pursuant to Bankruptcy Rule 7052 and FRCP 52 this opinion contains findings of fact and conclusions of law.

### Issue

Does debtors' modified plan of reorganization comply with all of the provisions of Chapter 12 and of Title 11 of the United States Code?

## Decision

Plan fails to comply with all of the requirements of Chapter 12 and cannot be confirmed in its present form. Debtors are granted fifteen days from the date this order is filed to file a second modified plan conforming to the requirements of this order. Failure to file a second modified plan by such date will result in dismissal of the case. At the time of filing the second modified plan, debtors are directed to serve upon Mr. Bothe on behalf of The Anchor Bank a copy of the second modified plan. Mr. Bothe, on behalf of his client, shall file objections to the second modified plan within ten days after it is filed or such objection shall be waived. If objections are filed, the Court shall consider the terms of the second modified plan and the objections. If such objections are the same as or not significantly different from those objections which have previously been litigated, the Court shall confirm the second modified plan over the objections. If there is a significant difference in the objections based upon the change of terms in the second modified plan, the Court shall set the matter for hearing on a expedited basis.

## Findings of Fact and Conclusions of Law

1. Debtors meet all of the qualification requirements of Chapter 12 of the Bankruptcy Code.

2. Debtors have complied with all of the terms and provisions of Chapter 12 and the Local Rules except for certain terms of the plan as are outlined below.

3. The values of the assets alleged in the debtors' modified plan are accepted by the Court as the actual values and the allowed secured claim of The Anchor Bank is determined to be $59,698. The balance of The Anchor Bank claim is allowed as unsecured and all of the unsecured claims listed in the schedules and the modified plan are allowed as unsecured.

4. The classification of creditors in the modified plan of reorganization is approved but the treatment of those creditors listed in Section VI(b) is not approved. The treatment of the allowed secured claim of David H. Hahn is approved. The treatment of the "necessary creditors" in Section VI(c) is approved.

5. The treatment of the allowed secured claim of The Anchor Bank is not approved.

6. The debtor proposes to pay the allowed secured claim of The Anchor Bank in deferred cash payments over a period of seven years at an annual interest rate of 10% with bi-annual payments. The first bi-annual payment would be six months after confirmation of the plan and would be in the amount of $6,030.93. Debtors propose to make a total of fourteen such payments to The Anchor Bank, at which time all debts to The Anchor Bank would be paid and discharged. In addition, the debtors propose to make available to the trustee all excess operating profits for each year ending after the confirmation of this plan to make additional principal payments on the secured portion of the claim of The Anchor Bank. The debtors propose as part of the operation to sell feeder pigs and cull sows in the ordinary course of business free and clear of liens of The Anchor Bank and use the proceeds to maintain the security of The Anchor Bank, living expenses, trustee fees, attorney fees, other professional fees and operating expenses. Debtor proposes that Anchor Bank shall maintain a lien on the remaining hogs and proceeds therefrom during the time that payments under the plan are owing to the Bank.

7. The Bank which has an undisputed validly perfected security interest in the sows and the offspring of the sows, as well as a security interest in equipment and cash collateral, objects to confirmation. The Bank acknowledges that the allowed secured claim is $59,698. However, the Bank claims that the debtor cannot sell the future offspring of sows which are its collateral free and clear of liens. To do so, according to the Bank, violates Section 552 of the Bankruptcy Code and Section 1225(a)(5)(B)(i).

Section 552(b) concerns the post-petition effect of a security interest. It provides in part:

"if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, rents or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extend provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the Court, after notice and a hearing and based on the equities of the case, orders otherwise."

Section 1225(a)(5)(B)(i) provides that the Court shall confirm a plan if the plan provides that the holder of an allowed secured claim retains the lien securing such claim. (Such section provides a number of other things but the paraphrased portion is the only portion significant for this case).

From the evidence presented, it is clear that the Bank's security interest in feeder pigs produced post-petition continues and is not cut off by the filing of the bankruptcy petition.

8. Debtor proposes to sell feeder pigs free and clear of such lien. The debtor proposes to use proceeds of such sale in the operation of the business which the Court finds as a fact means that Bank is deprived of its lien on those feeder pigs which are sold and deprived of its lien on the proceeds of such sales.

However, Section 552(b) permits the Court to order, after notice and a hearing and based upon the equities of the case, that the security interest of the creditor does not extend to certain offspring or to the proceeds of sale of those offspring.

9. There is an obvious tension between the various sections of the Bankruptcy Code, including Section 552 and 1225. If the Court were to find that debtor with a livestock operation subject to security interests in livestock and the offspring of such livestock was unable to sell the livestock to fund an operating Chapter 12 plan

because of the terms of Section 1225(a)(5)(B)(i) no "family farmer" whose business was substantially a livestock operation would be able to obtain confirmation of a Chapter 12 plan of reorganization. This Court has read the specific language of the Statute and the "legislative history." It is apparent that Congress is aware of the problems that farmers are having in a distressed agricultural economy as it exists at this time and that Congress was aware that many farmers could not effectively reorganize under the strict statutory language of Chapter 11. Therefore, Congress passed what now is known as Chapter 12, popularly called the Family Farmer Bankruptcy Act.

The interplay between Section 552 and Section 1225 is significant. The creditor with an allowed secured claim must receive under the plan of reorganization the value of its allowed secured claim. In this case, the creditor must receive $59,698 and if such receipt will be over a period of years, creditor has a right to receive interest at a fair rate so the creditor receives the present value of its claim. It has a right to no more money than has been proposed under this plan. However, it also has the right to protection of its interest in the collateral. "Collateral" is the sows and the offspring of the sows.

■ Chapter 12 does not absolutely prohibit debtors from using the proceeds of sale of certain collateral. This Court believes that if the debtor can propose a plan which "adequately protects" the interest of the creditor in the collateral, debtor may use such proceeds. This is no different than the standards for relief from the automatic stay under Section 362 and the standards for use of cash collateral under Section 363. Creditor must be protected, but if the creditor is protected, the debtor is permitted to use cash collateral. The Court is aware that preconfirmation "adequate protection" analysis may not be applicable to the interest of the creditor, post confirmation. See *In re Monnier Brothers*, 755 F.2d 1336, at 1340, 41 (8th Cir. 1985). However, if a plan is feasible and meets other confirmation requirements, the

creditor only has a right to receive the allowed amount of its secured claim and retain a lien on collateral to the extent of the balance due on the allowed secured claim. Any other conclusion prohibits Chapter 12 reorganization of a livestock operation.

■ 10. The business of the debtor is raising and selling feeder pigs. The debtor owns certain sows which are subject to the security interest of the Bank. Debtor, through use of the labor and management skills and marketing skills, produces pigs that when fed to a certain size are sold. The proceeds of those sales are used in the ordinary course of business outside of bankruptcy to pay the operating expenses of the business and to make the payments to the Bank. Without the management services of the debtors, there would be no offspring. If there were no offspring, the Bank, in a liquidation setting, would receive no more than the value of the sows as they exist at this time. Pursuant to the modified plan of reorganization, the Bank is to receive liquidation values of the collateral. It cannot receive more than its allowed secured claim.

11. The real question before the Court is "does the plan protect the interest of the Bank in the collateral since the debtors propose to sell feeder pigs and use the proceeds in the operation of the business?" The Court finds as a fact that this modified plan of reorganization does not protect the interest of the Bank and cannot be confirmed.

12. The Court concludes that the equities of the case are such that the lien of the creditor on the collateral necessary for the operation of the plan may be cut off pursuant to Section 552(b), if the plan protects the interest of the creditor in the manner described below.

13. Because of the short time periods permitted by the Statute, to simply deny confirmation and not suggest what changes will be required to obtain confirmation would be inappropriate and, therefore, the Court is going to make a requirement that, if complied with, will probably be sufficient to obtain confirmation. In the second modified plan of reorganization which the debtor must file pursuant to this order, the debtor must promise to maintain a minimum value in the hog herd, including sows plus pigs on hand, of at least 110% of the remaining balance of the Bank's allowed secured claim. In addition, the debtors must agree to file monthly reports of inventory and values and to permit inspection by the creditor or the trustee upon reasonable notice. Further, the debtors must propose in the second modified plan of reorganization that the unsecured claim of the Bank shall not be discharged until the earlier of three years from the date of confirmation or full payment of the allowed secured claim.

Such provisions will adequately protect the interest of the Bank and still permit the business to operate and will leave the creditor's lien in place on a herd with value in excess of the balance due.

■ 14. To obtain confirmation the debtor needs to modify the plan in one other manner. In Section VI(a) debtor proposes to make available to the trustee all excess operating profits for each year to make additional principal payments on the secured portion of the claim of The Anchor Bank. This provision is not in compliance with Section 1225(b)(1) which provides:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the Court may not approve the plan, unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the Court may approve under Section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

This provision is similar to a provision in Chapter 13 and is now being interpreted by this Court in Chapter 12 cases to mean that

excess disposable income must be paid on *unsecured* claims not to permit a faster paydown of the principal amount of the allowed secured claim. Therefore, the plan must be changed to provide that the plan will remain open for three years and all of the debtors' projected disposable income received in the three-year period shall be applied to make payments under the plan or on the unsecured claims. The allowed unsecured claims shall not be discharged for that three-year period.

15. If the above-listed requirements are met, debtors may need to change the trustee fee provision also.

16. Pending confirmation, debtors may use cash collateral as requested, but must keep inventory levels at 110% of the allowed secured claims.

Separate Journal Entry shall be filed denying confirmation pursuant to this Order.