In the Matter of Gerald Bruce SIMMONS, a/k/a G. Bruce Simmons, Patricia A. Simmons, Engaged in Farming, Debtors.

Bankruptcy No. 87–1035–C.

United States Bankruptcy Court, S.D. Iowa.

April 19, 1988.

Anita L. Shodeen, Des Moines, Iowa, Trustee.

Rush M. Shortley, Cedar Rapids, Iowa, for debtors.

Kevin R. Query, Asst. U.S. Atty., Des Moines, Iowa, for FmHA.

## ORDER ON
## CONFIRMATION OF PLAN

LEE M. JACKWIG, Chief Judge.

On December 2, 1987 a hearing on confirmation of plan came on for hearing in Des Moines, Iowa. Among those present at the hearing were Rush M. Shortley appearing on behalf of the debtors and Kevin R. Query, Assistant U.S. Attorney, appearing on behalf of the Farmers Home Administration (FmHA).

The FmHA has raised four objections to the plan: (1) that the deduction of delinquent real estate taxes from the value of the real estate in question is improper in determining its allowed secured claim; (2) that the proposed 10–year payment term for its secured claim is too long; (3) that the proposed discount rate of 5.5% is too low; and (4) that the debtors are not entitled to avoid liens on two cows, two yearlings and two calves. These matters have been submitted on briefs.

## FACTS

The debtors' obligations to the FmHA are secured in part by a mortgage on 217 acres. It is undisputed that the value of this parcel is $55,048.00, that delinquent prepetition real estate taxes relating to the parcel equal $9,028.00 and that the Federal Land Bank holds a first mortgage interest in the parcel in the amount of $37,154.00. In calculating the FmHA's secured claim, the debtors subtract the real estate taxes and the FLB's mortgage from the value of the real estate. The debtors thus assert that the FmHA's interest in the real estate equals $8,866.00.

The FmHA also has a security interest in the debtors' crops, livestock and machinery in the amount of $17,676.00. Under the plan, the debtors treat the FmHA's claims in one class. Therefore, the FmHA's allowed secured claim of $26,542.00 consists of its interest in the real estate, crops, livestock and machinery. The debtors propose to pay this claim over 10 years at a discount rate of 5.5%. The debtors also seek to avoid the FmHA's liens on two cows, two yearlings and two calves.

## DISCUSSION

### A. *Deduction of Real Estate Taxes*

The FmHA first contends that the real estate taxes should not be deducted from its claim. Under 11 U.S.C. section 506(a), the allowed claim of a lienholder is secured to the extent of the value of the lienholder's interest in the property in question. Section 506(a) also states that "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property...." Determining the extent of a secured creditor's lien involves deducting the amount of debt secured by senior liens. 3 *Collier on Bankruptcy* ¶ 506.04 at 506–19 (15th ed. 1986).

In Iowa, real estate taxes constitute a lien upon real property. Iowa Code section 445.28. Real estate taxes are first liens superior to all other encumbrances. *Merv E. Hilpipre Auction Co. v. Solon St. Bank,* 343 N.W.2d 452, 455 (Iowa 1984). Therefore, it is proper for the debtors to deduct taxes from the FmHA's claim. *Accord In re Edwardson,* 74 B.R. 831 (Bankr. D.N.D.1987) (pursuant to the North Dakota statute and caselaw, real estate taxes levied after real estate mortgage were deduct-

ed from secured claim). The value of the FmHA's secured interest in the real estate is $8,866.00.

## B. *Term*

The FmHA challenges the debtors' proposal to extend the term of repayment of FmHA's claim for 10 years. Questions concerning term of repayment implicate 11 U.S.C. section 1222(b)(9) which provides that a plan may "provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c)". Section 1222(c) states that, with the exception of subsections 1222(b)(5) and (b)(9), a plan may not provide for payment beyond three years unless the court for cause approves a longer period up to five years. In *In re Janssen Charolais Ranch, Inc.*, 73 B.R. 125, 127 (Bankr.D. Mont.1987), the court explained the limits placed upon payment of secured debt in the Chapter 12 context:

> The only time limits on payment of secured debt are those which are implied by the present value language of 1225(a)(5), and the feasibility test of 1225(a)(6). Under 1225(a)(5), the rights of the unconsenting secured creditor can be modified only if, among other things, the creditor retains its lien on the security and receives collateral with a present value not less than the amount of the secured claim.

■ In many Chapter 12 cases, the court has permitted debtors to pay claims secured by real estate over a period of 30 years or more and, if the facts warrant, has limited claims secured by chattels to a period of seven years or less. *See Matter of Halls*, No. 87–943–C, slip op. (Bankr. S.D.Iowa February 1, 1988) (claim secured by collateral consisting of used machinery, which made up 75% of the security, and livestock could not be stretched beyond 7 years); *Matter of Royona Ranch*, No. 87–1118–C, slip op. (Bankr.S.D.Iowa April 11, 1988) (claim secured by livestock could be paid out over 15 years if plan provided for a replacement lien and maintenance of herd

levels at a value equal to or greater than the balance of the claim). Here the FmHA's claim is secured by real estate, machinery, livestock and crops. As the debtors make payments to the FLB under the plan, the secured position of the FmHA in the amount of $8,866.00 will improve insofar as a greater value of security will be present to protect the allowed secured claim. The parties seem to agree that the used machinery is of limited value and well within the exemption and lien avoidance ceiling. Paragraph 3.06(e) of the plan provides for replacement liens and proper maintenance of herd levels and therefore satisfies the Chapter 12 adequate protection standards for livestock as discussed in the *Royona Ranch* decision. Finally, although an interest in crops produced postpetition has been cut off by operation of 11 U.S.C. section 552, the FmHA should benefit in general from debtors' intent to continue to produce grain and hay crops on an annual basis. Hence, the court finds the plan's proposed 10 year payout term to be reasonable under the circumstances.

## C. *Discount Rate*

■ FmHA objects to the 5.5% discount rate the debtors propose to apply to FmHA's allowed secured claim. This court has ruled that the discount rate to be utilized in Chapter 12 cases involving conventional loans shall be computed using a treasury bond yield with a remaining maturity matched to the average amount outstanding during the repayment period of the allowed claim plus 2 percent to account for risk. *Matter of Doud*, 74 B.R. 865 (Bankr. S.D.Iowa 1987), *aff'd sub nom., United States v. Doud*, No. 87–577–B (S.D.Iowa, filed December 7, 1987), available on WESTLAW, 1987 WL 46813. With respect to FmHA loans that bear interest rates that reflect the government's cost of money or a subsidized rate, this court held that the discount rate shall equal the contract rate. *Id.* The thrust of the FmHA's argument is that the risks the FmHA assumes in administering its loan programs outside of bankruptcy should not be equated with the risks the FmHA incurs under a plan of reorganization. FmHA maintains that the

risks it undertakes in bankruptcy are no different than risks commercial banks undertake in bankruptcy and thus concludes it should be subject to the commercial loan formula. The argument is incompatible with the holding in *Doud.* This court acknowledged that the FmHA's mission is to provide credit to family farmers who are unable to obtain conventional credit and found that application of the conventional loan calculation would thwart this mission. Implicit in this holding is a recognition that commercial banks are indeed different from the FmHA. The most obvious difference is that the FmHA lends money to those that commercial banks refuse at interest rates generally below market rates. The risks involved in providing credit to high risk borrowers is borne by the taxpayers. There is no reason to ignore the FmHA's mission and place all risk on the debtor just because the FmHA borrower filed bankruptcy. Central to the result in *Doud* was the court's attempt to reconcile the Code and statutory provisions governing the FmHA. Accepting FmHA's argument is tantamount to disregarding such provisions.

### D. *Lien Avoidance*

Finally, the FmHA claims that the debtors may not avoid liens on two cows, two yearlings, two calves, five round bales of hay and 200 bushel of oats. The hay and oats are to be used to feed the livestock.

11 U.S.C. section 522(f) provides in part that:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if this lien is—

. . . .

(2) a nonpossessory, nonpurchase-money security in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or a dependent of the debtor.

Iowa Code section 627.6(11) permits farm debtors to hold as exempt from execution, any combination of the following not to exceed a value of $10,000.00:

a. Implements and equipment reasonably related to a normal farming operation.

b. Livestock and feed for the livestock reasonably related to a normal farming operation.

11 U.S.C. section 522(b)(1) permits states to "opt out" of the federal exemption scheme. Iowa has done so by virtue of Iowa Code section 627.10. "Although a state may elect to control what property is exempt under state law, federal law determines the availability of a lien avoidance." *Matter of Thompson,* 750 F.2d 628, 630 (8th Cir.1984). In *Thompson,* the Eighth Circuit Court of Appeals ruled that lien avoidance under section 522(f)(2)(A) is available for those animals held primarily for personal, family, or household use. Therefore under this subsection, the debtors herein may avoid the liens in the livestock and feed for livestock used for such purposes. Liens on livestock and feed held for commercial use cannot be avoided under this subsection.

In their brief the debtors acknowledge that their family consumes the meat from two beef cattle annually. They seek to retain two cows for beef production for the family, two yearlings for slaughter in 1988 and two calves to be butchered in 1989. The FmHA contends the fresh start policy behind 11 U.S.C. section 522(f)(2)(A) does not contemplate retention of a cow-calf operation that would produce beef indefinitely. The government cites *In re Newbury,* 70 B.R. 1 (Bankr.D.Kan.1985) in support of its position. In that case, Bankruptcy Judge James A. Pusateri held:

One of the enumerated types of property [in 11 U.S.C. section 522(f)(2)(a) ] is 'animals' but only if held primarily for the personal, family or household use. Cat-

tle held as a means of producing income do not qualify. If, however, the debtors can show that any of these animals are to be used within a year as food for the family, the animals would be exemptible under K.S.A. § 60–2304(1) and at the same time would qualify as property held for personal or household use. In that case, the lien on those animals would be avoidable. *See In re Thompson*, 46 B.R. 1, 2 (Bankr.S.D.Iowa 1984).

*Id.* at 2. However, unlike the Iowa exemption statute, the Kansas statute specifically provides:

> Every person residing in this state shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property:
>
> (1) The furnishings, equipment and supplies, including food, fuel and clothing, for the person which is in the person's present possession and is reasonably necessary at the principal residence of the person *for a period of one year.* (Emphasis added.)

Kan.Stat.Ann. § 60–2304(1) (1986).

Although neither Iowa Code Section 627.-6(11)(b) nor 11 U.S.C. section 522(f)(2)(A) contain any time limitations, the fresh start must end sometime. In *Matter of Thompson*, 750 F.2d 628, 631 (8th Cir.1984) (footnote omitted), the Eighth Circuit Court of Appeals pointed out:

> Although Congress was interested in seeing that debtors achieve a fresh start, the primary goal of the lien avoidance statute was to prevent creditors from forcing debtors in bankruptcy to reaffirm consumer debts. Not every item exempt under state or federal law can be avoided under section 522(f)(2). Congress was concerned that a balance be maintained between creditors and debtors. The Bankruptcy Reform Act of 1978 was not intended to be "pro-debtor." *See* Note, *Avoiding Liens*, 15 U.Mich.J.L.Ref. at 582.

. . . .

In conclusion, we hold that only those personal goods necessary to the debtor's new beginning and of little resale value fit the federal bankruptcy philosophy embodied in section 522(f)(2). We concur with the bankruptcy judge that the Thompsons' pigs were not the sort of low value personal goods in which 'adhesion contract' security interests are taken. The APCA nonpurchase-money security interest in the 210 pigs is not avoidable under 11 U.S.C. § 522(f)(2)(A) (1982).

■ It is common knowledge that a year's supply of meat for human consumption has considerable value. Moreover, the court notes that non farm debtors cannot avail themselves of any similar exemption given the state statutory framework. Accordingly, the court determines that lien avoidance pursuant to 11 U.S.C. section 522(f)(2)(A) and premised on Iowa Code section 627.6(11)(b) should be limited to one year's consumption. Since the debtors have stated that they consume the meat from two beef cattle annually, they may avoid the FmHA lien on two cows, not on the two yearlings and two calves.

■ As a final matter and consistent with this court's numerous bench rulings in Chapter 12 cases, the actual avoidance of the lien may not occur until the discharge becomes effective pursuant to 11 U.S.C. section 1228. This court agrees with the conclusion that lien avoidance is available in a Chapter 12 case. (*See In re Dykstra*, 80 B.R. 128 (Bankr.N.D.Iowa 1987) for a thorough discussion of the relevant Chapter 13 caselaw and the legislative history of Chapter 12.) However, unlike a Chapter 7 case in which both a discharge and fresh start and a lifting of the stay by operation of 11 U.S.C. section 362(c) typically occur within a few months of the date the petition is filed, the automatic stay remains in effect during the usual three years of the plan in Chapter 12 and Chapter 13. The debtors in the latter two chapters do not receive any discharge of debt—a fresh start, until they have completed the plan payments or until a hardship discharge is entered if certain Code standards are met. 11 U.S.C. subsections 1228(a) and (b) and subsections 1328(a) and (b). Unlike Chapter 13, the Congressional intent underlying

Chapter 12 was not to protect consumer debtors and to encourage repayment rather than liquidation. Rather Chapter 12 was designed to afford another avenue of reorganization for those farm debtors who had no hope of meeting the stricter adequate protection and confirmation standards of Chapter 11.

Lien avoidance pursuant to 11 U.S.C. section 522(f) was included in the sweeping 1978 bankruptcy legislation as a means by which consumer debtors could avoid adhesion contracts. *Matter of Thompson*, 750 F.2d 628 (8th Cir.1984). As such, lien avoidance seems more geared to Chapter 7 and Chapter 13 than to Chapter 11 and to the subsequently enacted Chapter 12. In the *Dykstra* decision, Bankruptcy Judge Michael J. Melloy observes that he was unable to find any case in which a Chapter 11 debtor sought lien avoidance and suggests the reason may be that only individuals may exempt property of the estate pursuant to 11 U.S.C. section 522(b). *In re Dykstra*, 80 B.R. 128, 130 n. 1 (Bankr.N.D. Iowa 1987). It may also be that, in Chapter 11 cases brought by individuals engaged in business,[1] exemptions provided by state law are of limited significance when compared with the overall assets of the operation. In most of those Chapter 11 cases, the impact of exemption and lien avoidance on the liquidation analysis, which establishes whether the debtor has met the best interest of creditors test under 11 U.S.C. section 1129(a)(7), is minimal. Indeed, if it is otherwise, the debtor will likely face a feasibility challenge. Parenthetically, the court also notes that a discharge and lifting of the automatic stay in a Chapter 11 case typically occur upon confirmation of the plan. 11 U.S.C. subsections 1141(b) and (d).

Given the above considerations, the value of the assets and exemptions involved in a Chapter 12 case and the unproven success of the confirmed plans in this district insofar as most confirmed plans have been in existence less than one year, the court has conditioned the actual event of lien avoidance upon the entry of discharge. Then, if a motion to dismiss is granted in a case in which a confirmed plan exists, it will not be necessary to attempt what might be an impossible task of reinstating the lien pursuant to 11 U.S.C. § 349(b)(1)(B).[2] Also, if the case is later converted to Chapter 7, it may be that different exemptions would apply in certain instances in this Circuit. *In re Lindberg*, 735 F.2d 1087 (8th Cir. 1984).

## CONCLUSION AND ORDER

WHEREFORE, for the reasons set forth above, the court finds that:

1. The value of FmHA's secured interest in the real estate is $8,866.00;

2. The 10–year repayment period for the FmHA claim meets the requirements of 11 U.S.C. sections 1222(b)(9) and 1225(a)(5);

3. The discount rate the debtors propose to apply to FmHA's allowed secured claim shall be calculated in a manner that comports with *Matter of Doud*, 74 B.R. 865 (Bankr.S.D.Iowa 1987), *aff'd sub nom.*, *United States v. Doud*, No. 87–577–B (S.D. Iowa, filed December 7, 1987);

4. Two cows are a reasonable amount of livestock for the debtors' personal use pursuant to 11 U.S.C. section 522(f)(2).

THEREFORE, FmHA's objections to the plan are overruled with the exception of the objection that relates to lien avoidance on the cattle. This objection is sustained with respect to the two yearlings and the two calves. The lien avoidance shall occur

1. The Eighth Circuit decision in *Wamsganz v. Boatmen's Bank of DeSoto*, 804 F.2d 503 (8th Cir.1986) does not bar all individuals from Chapter 11 relief but rather limits the chapter to those actually engaged in business.

2. According to the legislative history, 11 U.S.C. section 349 applies only to pre-discharge dismissals. H.R. No. 95–595, 95th Cong., 1st Sess. 337–38 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 48–9 (1978), U.S.Code Cong. & Admin. News, p. 5787. Hence, reinstatement of liens would not be available in Chapter 7 cases after a discharge had been entered and in most Chapter 11 postconfirmation cases. But see 11 U.S.C. subsections 727(d) and (e) and the qualifying, introductory language of 11 U.S.C. section 1141(d)(1).

upon discharge under 11 U.S.C. section 1228.

The debtors are hereby ordered to submit an amended plan that comports with this decision, an affidavit of compliance and a proposed order of confirmation by May 3, 1988.