In re James A. HANNA and Lynda L. Hanna, Debtors.

The ABBOTT BANK–THEDFORD, a Nebraska banking corporation, formerly known as Citizens State Bank of Thedford, Appellant,

v.

James A. HANNA and Lynda L. Hanna, Appellees.

No. 89–2003NE.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1990.

Decided Aug. 20, 1990.

Douglas E. Quinn, Omaha, Neb., for appellant.

George G. Vinton, North Platte, Neb., for appellees.

Before WOLLMAN and MAGILL, Circuit Judges, and WATERS,* District Judge.

MAGILL, Circuit Judge.

The Abbott Bank–Thedford (the bank) appeals from the district court's decision affirming the bankruptcy court's confirmation of the debtors' Chapter 12 plan. The principal issue before us is whether the lien retention language of 11 U.S.C. § 1225(a)(5)(B)(i) must be applied literally in the case of livestock operations.[1] We conclude that such an application must be rejected because it produces a result demonstrably at odds with congressional intent.

---

* THE HONORABLE H. FRANKLIN WATERS, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

1. Section 1225(a)(5) provides that a Chapter 12 plan may not be confirmed unless

with respect to each allowed secured claim provided for by the plan—
    (A) the holder of such claim has accepted the plan;
    (B)(i) the plan provides that the holder of such claim *retain the lien* securing such claim; and
    (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
    (C) the debtor surrenders the property securing such claim to such holder (emphasis added).

We reverse and remand, however, because the confirmed plan's treatment of the bank's lien goes beyond a permissible interpretation of Chapter 12's lien retention requirement.

## I.

The debtors, James and Lynda Hanna, own and operate a cattle ranch in Cherry County, Nebraska. In the years preceding their bankruptcy petition, the bank provided the debtors with operating capital for the ranch. Most of the livestock produced on the ranch each year was sold in the fall and early winter. The debtors deposited the proceeds from livestock sales with the bank and used them to make payments on the bank's note, as well as payments of lease and mortgage obligations and other expenses. Prior to December 1, 1986, the date its note came due, the bank notified the debtors that it would no longer release proceeds from cattle sales for payments to other creditors. Faced with the likelihood of having to liquidate their ranching operation in order to pay their creditors, the debtors filed a Chapter 12 bankruptcy petition on December 31, 1986. The bankruptcy court denied confirmation of the first two reorganization plans submitted by the debtors. Over the bank's objection, the court entered an order confirming the debtors' third amended plan on November 12, 1987.

At the time of confirmation, the bank held an allowed secured claim of $423,175 plus interest at the contract rate from the date of petition and fees and costs under 11 U.S.C. § 506. This claim was secured by a prepetition security interest in all of the debtors' livestock and offspring thereof, proceeds from the sale of such livestock, and the debtors' machinery and equipment. The confirmed plan divides the bank's claim into two notes: a twenty-five year note for $277,173 plus interest at the *Wichmann* rate,[2] and a nine year note for $146,002 plus interest at the *Wichmann* rate. The plan provides for annual payments on these notes, and states that both notes are secured by a lien on all of the debtors' livestock, the offspring thereof, and the debt-

ors' machinery and equipment. The plan includes additional security for the twenty-five year note by granting the bank a second mortgage on agricultural land in which the debtors have $277,173 in equity. The first mortgage on this land is over $400,-000.

The plan provides that upon confirmation, the debtors will sell 100 cull cows, 135 spring calves, and 72 heifers. The proceeds from these sales, $158,550, are to be used for payments to other plan creditors and certain operating expenses. At the time of confirmation, the bank's prepetition security interest gave it a lien on collateral valued at approximately 120% of its claim. Following confirmation and the sale of livestock to fund payments to other creditors, the bank's security under the plan increases to approximately 165% of its claim due to the difference between the value of the cattle to be sold and the stated value of the second mortgage to be granted the bank. This 65% equity cushion is furnished entirely by the second mortgage on real estate. The plan also states that after the initial cattle sales, the debtors' breeding herd numbers will be maintained so as to ensure the production of enough offspring for sale to continue funding the plan in the future.

Finding that the plan adequately protects the bank's claim, the bankruptcy court rejected the bank's objection that the plan violates § 1225(a)(5)(B)(i)'s lien retention requirement by substituting a second mortgage on real estate for the bank's lien on the cattle to be sold upon confirmation. The bankruptcy court granted a stay of its confirmation order pending appeal to the district court, conditioning the stay on the posting of a $10,000 cost bond by the bank. The stay extended to only those portions of the plan that affected the bank and expressly permitted the debtors to make all plan payments to creditors other than the bank.

Relying on *In re Wobig*, 73 B.R. 292 (Bankr.D.Neb.1987), the district court held that § 1225(a)(5)(B)(i) allows the debtors to sell part of the bank's collateral to fund the plan if the bank is adequately protected to the extent of its secured claim. The court

---

**2.** *In re Wichmann,* 77 B.R. 718 (Bankr.D.Neb. 1987).

concluded that it could not find clearly erroneous the bankruptcy court's determination that the plan provides adequate protection for the bank's claim. After rejecting the bank's other arguments against confirmation, the district court affirmed the confirmation order. The court granted a stay of its judgment pending appeal under the same terms as the bankruptcy court's stay.

On appeal, the bank raises the same arguments it made to the bankruptcy and district courts. First and foremost, the bank argues that Chapter 12 does not permit the confirmation of a plan under which collateral securing a creditor's claim is replaced by other collateral, unless the creditor agrees to such a replacement lien. The bank further contends that this is true even if the plan provides for adequate protection of the creditor's secured claim because adequate protection is a standard that applies only during the period between petition and confirmation, and thus cannot be used by the bankruptcy court in deciding whether to confirm a plan. The bank also argues that reversal is required because the debtors' plan (1) was not proposed in good faith, (2) unfairly discriminates among similarly situated claims and interests, and (3) results in an unconstitutional taking of the bank's property.[3]

## II.

### A.

■ We first dispose of the debtors' arguments regarding the scope of the lien on livestock held by the bank at the time of confirmation. Because it is raised for the first time on appeal, we decline to address the debtors' suggestion that the bank did not list offspring in its financing statements and therefore failed to perfect any security interest it had in offspring. *See, e.g., Molasky v. Commissioner,* 897 F.2d 334, 338 (8th Cir.1990) (issue first raised on appeal will not be considered absent demonstration that manifest injustice would otherwise result). The debtors argue further that despite their failure to challenge the validity of the bank's security interest, any lien the bank had on livestock born or conceived postpetition was automatically terminated by 11 U.S.C. § 552.[4] They assert that their plan therefore does not deprive the bank of its lien on these livestock, but rather grants it such a lien. Whatever the merits of the debtors' argument as to the effect of § 552,[5] we may not accept the argument in this case. In a journal entry after the confirmation hearing on the debtors' first amended plan, the bankruptcy court expressly found that the "[b]ank has [a] lien on prepetition assets and post-petition offspring and proceeds." Because the debtors did not object to this finding, they are precluded from doing so now.

■ We must also reject the debtors' argument that 11 U.S.C. § 506(a) restricts an oversecured creditor's lien to the

---

**3.** We do not reach these three arguments in light of our conclusion that the debtors' plan does not satisfy Chapter 12's lien retention requirement.

**4.** Section 552 reads as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

**5.** The debtors base their interpretation of § 552 on *In re Big Hook Land & Cattle Co.,* 81 B.R. 1001 (Bankr.D.Mont.1988). However, *Big Hook* could be read as simply holding that an undersecured creditor with a lien on livestock and the offspring thereof may not have the allowed amount of its secured claim increased by the value of projected postconfirmation increases in the herd. *See id.* at 1002–04.

amount of its allowed claim.[6] Section 506(a) simply bifurcates an undersecured claim into a secured claim in the amount of the value of the collateral and a separate unsecured claim. Its purpose is not to limit the extent of an oversecured creditor's lien. Section 506(b) makes this clear by giving a creditor the right to postpetition interest on an allowed secured claim "[t]o the extent that [the] claim is secured by property the value of which ... is greater than the amount of such claim." *See also United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372–73, 108 S.Ct. 626, 630–31, 98 L.Ed.2d 740 (1988) (discussing effect of § 506(b)). In short, § 506(a) cannot be read as extinguishing an oversecured creditor's equity cushion. *See id.* at 374, 108 S.Ct. at 631 (noting that an oversecured creditor has "a perfected security interest" in equity cushion).[7]

**B.**

Section 1225 sets forth the requirements for confirmation of a Chapter 12 plan. At issue here is § 1225(a)(5)(B)(i), which prescribes the treatment of a lien securing an allowed secured claim where the creditor holding the claim has not accepted the plan and the plan does not provide that the debtor surrender the property securing the claim to the creditor. In such a case, the plan must satisfy two requirements: (1) under § 1225(a)(5)(B)(ii), it must provide that the creditor receive property having a present value not less than the allowed amount of the claim, and (2) under § 1225(a)(5)(B)(i), it must provide that the creditor "retain *the* lien securing such claim" (emphasis added). "Taken literally, this language would preclude the debtor from selling the collateral, using the proceeds in the debtor's operation, and providing the creditor with substitute collateral."

R. Rogers & L. King, *Collier Farm Bankruptcy Guide* ¶ 408[2][b], at 4–95 (1989). The bank contends that the plain language of § 1225(a)(5)(B)(i) must be strictly enforced in this way without exception. This position finds support in several bankruptcy court decisions that applied the section literally in denying confirmation. *See In re Butler*, 97 B.R. 508, 511 (Bankr.E.D. Ark.1988); *In re Batchelor*, 97 B.R. 993, 995 (Bankr.E.D.Ark.1988); *In re Hochmuth Farms, Inc.*, 79 B.R. 266, 269 (Bankr.D.Md.1987); *In re Rott*, 73 B.R. 366, 374 (Bankr.D.N.D.1987); *In re Citrowske*, 72 B.R. 613, 616 (Bankr.D.Minn. 1987). Chapter 13's lien retention provision, 11 U.S.C. § 1325(a)(5)(B)(i), which is identical to its counterpart in Chapter 12, has also been strictly construed. *See In re Hink*, 81 B.R. 489, 491 (Bankr.W.D.Ark. 1987); *In re Litton*, 36 B.R. 660, 661 (Bankr.M.D.Tenn.1984); *see also Justice v. Valley Nat'l Bank*, 849 F.2d 1078, 1083 (8th Cir.1988) ("Chapter 12 is patterned after Chapter 13, rendering Chapter 13 cases relevant to our interpretation of Chapter 12").

However, none of the above decisions involved a debtor whose main source of income was a livestock operation. The problem with a literal application of § 1225(a)(5)(B)(i) in such a case was recognized in *Wobig*, 73 B.R. at 294:

> If ... [a] debtor with a livestock operation subject to security interests in livestock and the offspring of such livestock was unable to sell the livestock to fund an operating Chapter 12 plan because of the terms of Section 1225(a)(5)(B)(i) no 'family farmer' whose business was substantially a livestock operation would be able to obtain confirmation of a Chapter 12 plan of reorganization.

In addition to *Wobig*, 73 B.R. at 294–95, several other bankruptcy court decisions

---

6. Section 506(a) states in relevant part that:
   An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

7. Because the issue is not before us, we express no opinion as to whether an oversecured creditor is entitled to adequate protection of the equity cushion as an "interest in property" within the meaning of 11 U.S.C. § 362(d)(1). *See In re Lane*, 108 B.R. 6, 7–9 (Bankr.D.Mass.1989) (rejecting position that creditors are entitled to such protection under § 362(d)(1)).

have declined to adhere to a literal reading of § 1225(a)(5)(B)(i) in the case of livestock operations. *See In re Underwood*, 87 B.R. 594, 597–98 (Bankr.D.Neb.1988); *In re Simmons*, 86 B.R. 160, 162 (Bankr.S.D. Iowa 1988) (citing *In re Royona Ranch*, No. 87–1118–C, 1988 WL 70567 (Bankr.S.D. Iowa Apr. 11, 1988)); *In re Milleson*, 83 B.R. 696, 699–701 (Bankr.D.Neb.1988); *In re Hansen*, 77 B.R. 722, 726 (Bankr.D.N.D. 1987). Indeed, the *Hansen* court was the same one that in a different context had stated "section 1225(a)(5)(B)(i) requires that *the* lien be retained, not *a* lien." *Rott*, 73 B.R. at 374 (emphasis in original).

In a recent decision interpreting a Bankruptcy Code section, the Supreme Court instructed that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). The intention of Congress in enacting Chapter 12 was "to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." H.R.Conf.Rep. No. 958, 99th Cong., 2d Sess. 48, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5246, 5249. The literal application of § 1225(a)(5)(B)(i) gives livestock farmers no such chance because

> if Debtors in the livestock business are required to use the entire proceeds of all of their livestock sold on an annual basis to be applied to the creditor holding the livestock as security, there would be no funds available to pay the Debtors' remaining creditors, operating expenses, or living expenses.

*Hansen*, 77 B.R. at 726. We do not believe that by using the language "the lien," Congress intended to preclude livestock opera-

tions from obtaining confirmation of a Chapter 12 plan absent the consent of the creditor whose claim is secured by the livestock. Accordingly, because it produces a result directly at odds with congressional intent, the literal application of § 1225(a)(5)(B)(i) is inappropriate in the case of livestock operations.

We conclude that in such a case, the language "retain the lien" in § 1225(a)(5)(B)(i) can be interpreted to mean that the livestock lender must retain its lien "on the herd rather than on the particular animals that comprise the herd." Farm Bankruptcy Guide ¶ 4.08[2][b], at 4–95. "The fact that the particular animals comprising the herd change over time will not matter so long as the creditor retains its lien on the herd and the value of the creditor's claim can be appropriately protected." *Id.* This interpretation affords family farmers in the livestock business the potential to reorganize under Chapter 12, but does not depart completely from the express terms of § 1225(a)(5)(B)(i). One difficulty with the interpretation is that the language of § 1225(a)(5)(B)(i) cannot be read as authorizing the termination of the lender's lien on individual animals sold under the plan to fund payments to other creditors. However, we believe this authority can be found in § 552(b), which provides that the bankruptcy court may cut off a secured creditor's lien on certain proceeds, product, or offspring of prepetition collateral "after notice and a hearing and based on the equities of the case."[8] The § 552(b) determination in this context should not be based on a totally unstructured evaluation of equitable considerations, but rather should focus on the collateral that must be sold to implement the debtor's proposed plan and whether cutting off the lien on that collateral would leave the creditor's claim without adequate protection under the plan. *See Wobig*, 73 B.R. at 295. Given this focus, the § 552(b) hearing need not be held separately but may be

---

**8.** Both *Underwood*, 87 B.R. at 597–98, and *Milleson*, 83 B.R. at 700–01, found that such authority is provided by 11 U.S.C. § 363(*l*). We disagree with this view. It seems clear that § 363(*l*) is directed solely at making so-called

*ipso facto* or bankruptcy-default clauses unenforceable. *See In re Peacock*, 87 B.R. 657, 659 (Bankr.D.Colo.1988); 2 L. King, Collier on Bankruptcy ¶ 363.12, at 363–39–40 (15th ed. 1990).

incorporated into the confirmation hearing itself. *See id.* (making § 552(b) determination in course of decision on confirmation).

■ The lien on the herd will not suffice to meet Chapter 12's lien retention requirement if it fails to adequately protect the creditor's secured claim over the course of the plan repayment period. *See Underwood,* 87 B.R. at 597; *Simmons,* 86 B.R. at 162; *Milleson,* 83 B.R. at 701; *Hansen,* 77 B.R. at 726; *Wobig,* 73 B.R. at 295. Accordingly, the plan must provide that the value of the herd will be maintained at a level sufficient to ensure that the creditor will recover the balance remaining on its claim in the event the debtor defaults on plan payments.[9] The determination of the appropriate margin of protection must take into account the risk of fluctuations in livestock prices during the repayment term. *See Underwood,* 87 B.R. at 596–97; *Milleson,* 83 B.R. at 701. Furthermore, depending upon the level of over-collateralization provided for in the plan, it may be essential that the plan contain additional safeguards, such as monthly collateral reports, allowance of inspection by the creditor or trustee upon reasonable notice, or monthly interest payments. *See Wobig,* 73 B.R. at 295; Farm Bankruptcy Guide ¶ 4.08[2][b], at 4–97.

■ The bank contends that a less-than-literal interpretation of § 1225(a)(5)(B)(i) is impermissible because the concept of adequate protection may not be used in deciding whether a reorganization plan should be confirmed. We find no merit in this contention.[10] The confirmation requirements of § 1225(a) implicitly embody the concept of adequate protection for a secured creditor's claim. *See also* Farm Bankruptcy Guide ¶ 4.08[2][b], at 4–95 ("debtor's good faith obligation, and perhaps constitutional considerations as well, will require that the creditor's interest in its collateral be protected at all times during the plan repayment period"). The lien retention requirement itself is not met if payments under the plan to reduce the principal amount of the claim will not keep pace with the depreciation of the lien collateral. *In re Borg,* 88 B.R. 288, 292 (Bankr. D.Mont.1988). In addition, the requirement of adequate protection is also contained in § 1225(a)(5)(B)(ii) and § 1225(a)(6), which require that the secured creditor receive payments under the plan at least equal to the present value of its claim and that the debtor will be able to make all those payments. *In re Adam,* 92 B.R. 732, 735 (Bankr.E.D.Mich.1988).

### C.

■ Measured against the interpretation we have adopted, the debtors' plan in this case falls short of meeting Chapter 12's lien retention requirement. Rather than providing that the bank retain a lien on the herd sufficient to adequately protect its secured claim, the plan replaces the bank's

9. Although we need not decide the question under the circumstances of the instant case, we note that the adequate protection element may be satisfied with respect to an oversecured creditor even if the plan does not provide for the maintenance of the entire equity cushion in the herd existing at the time of confirmation. *See Underwood,* 87 B.R. at 598 ("equity cushion is entitled to adequate protection to the extent reasonably necessary" to assure creditor will recover balance of claim if debtor defaults); Farm Bankruptcy Guide ¶ 4.08[2][b], at 4–97 (plan need only protect against "undue erosion" of oversecured creditor's equity cushion).

10. In support of its argument, the bank points to *In re Monnier Bros.,* 755 F.2d 1336, 1340 (8th Cir.1985), in which this court noted that " 'adequate protection' is not a standard the Bankruptcy Code uses in connection with confirmation decisions. Instead, the adequate protection requirements apply *primarily* in the context of preconfirmation proceedings" (emphasis added). We read this statement as simply referring to those Code sections that contain express "adequate protection" requirements, such as § 363. *See* Farm Bankruptcy Guide ¶ 4.08[2][b], at 4–95 ("the adequate protection requirement of section 363 is not applicable over the plan repayment term"). The bank overlooks *Monnier's* acknowledgement that "a reorganization plan [must] provide[ ] a secured creditor adequate protection for the full value of his claim." 755 F.2d at 1339. There are numerous decisions applying this aspect of adequate protection as a condition of confirmation. *See, e.g., In re O'Farrell,* 74 B.R. 421, 423–24 (Bankr.N.D.Fla. 1987); *In re Johnson,* 63 B.R. 550, 554 (Bankr.D. Colo.1986); *In re Parker,* 46 B.R. 106, 108 (Bankr.N.D.Ga.1985); *In re Lum,* 1 B.R. 186, 187 & n. 1 (Bankr.E.D.Tenn.1979).

entire equity cushion in the herd with a second mortgage on agricultural land encumbered by a first mortgage in excess of $400,000. Such a provision does not satisfy § 1225(a)(5)(B)(i). The mortgage granted the bank is much less liquid and carries with it different risks than a lien on cattle, for which the bank had bargained. The debtors' plan denies the bank too much of the benefit of that bargain. We recognize that an interpretation of § 1225(a)(5)(B)(i) which permits the debtor to replace a creditor's lien on livestock with a lien on any type of collateral, no matter how illiquid or encumbered, would give livestock operations an even greater chance of obtaining confirmation of a Chapter 12 plan.[11] But in our view that does not justify the complete disregard of the express language of § 1225(a)(5)(B)(i) which such an interpretation entails. In sum, the debtors' plan calls for a construction of that section which renders Congress' use of the words "the lien" all but meaningless, and thereby impermissibly alters the balance struck between the rights of debtors and creditors.

Another shortcoming of the plan is its failure to provide any assurance that the debtors will be able to maintain the value of the herd after the initial cattle sales. The plan merely states that breeding herd numbers will be maintained at an adequate level without any analysis or description of how this will be accomplished, particularly in the event that cattle prices fall. Finally, although one of the bankruptcy court's journal entries indicates it thought a § 552(b) hearing might be necessary, the court did not hold such a hearing or determine whether the bank's lien on cattle to be sold to fund payments to other creditors should be cut off based on the equities of the case. In light of these deficiencies, we must conclude that the debtors' present plan should not have been confirmed.

### III.

For the foregoing reasons, the bankruptcy court's order confirming the debtors'

Chapter 12 plan is reversed. The case is remanded to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

---

**11.** As for the debtors' ability to reorganize successfully without the benefit of this overly expansive interpretation, we note that they may have been able to free up the funds necessary to implement the initial stages of their plan by using their equity in real estate to obtain credit or incur debt. *See* 11 U.S.C. § 364(c)(3).